W. R. BURGESS, PLAINTIFF IN ERROR, *vs.* W. R. CARPENTER, DEFENDANT IN ERROR.

Plaintiff hired laborers to make a crop on his farm, under a contract, by which the laborers were to have one third of the crop for their services, the plaintiff retaining two-thirds for himself. In June, one of the laborers was shot and so severely wounded that he was disabled from working in the crop for several weeks, and, in consequence thereof, as it was contended, the crop made was much less in quantity than it otherwise would have been : *Held*, That plaintiff had sustained no legal injury which gave him a right of action against the party who inflicted the wound.

The common law gives the master no right of action against a third person for an injury inflicted upon his servant, causing loss of service, except where the servant is a menial one—*semble*.

BEFORE GREEN, J., AT MANNING, JANUARY, 1870.

The case was brought up by writ of error. It was an action on the case brought to recover damages, which plaintiff sustained by reason of loss of service of a hired servant, a colored man, named Henry Burgess, employed as a ploughman by plaintiff for the year 1866, the said servant having been disabled by reason of a gunshot wound, charged to have been inflicted by defendant.

Dr. T. L. Burgess, witness for plaintiff, testified : That Henry Burgess was wounded about 7th June, 1866, by a gunshot, and that he took him to his house and nursed him for several weeks, and supported him while he was unable to work ; that Henry Burgess was unable, in consequence of his wound, to do any work until some time in August. It was worth two or three dollars per month to furnish food for him. Henry Burgess was a ploughman, and, in consequence of his being unable to work, the crop was seriously damaged, and cut short at least $400, the plow being stopped during his sickness. Plaintiff did not hire, or try to hire, any one

in his place. Scarcely a living was made that year. Henry Burgess was hired for what was known as a share in the crop; one-third of the crop being divisable amongst the laborers as their pay—plaintiff furnishing stock and provisions, and receiving two-thirds of the crop, and the laborers one-third amongst them.

The horse used by Henry Burgess was not worked in the crop while he was sick and disabled, and was fed by plaintiff.

At this stage of the trial, His Honor held that it was useless to go on and connect the defendant with the shooting, because the contract to pay Henry Burgess a share in the crop made him a co-partner, and not a servant; and that plaintiff had no right of action against defendant; and he ordered a non-suit.

Plaintiff assigned the following grounds of objection to the ruling of His Honor:

1. Because, it is respectfully submitted, His Honor erred in ordering a non-suit upon the ground that the plaintiff had no right of action against defendant, because plaintiff's servant was to receive a portion of the crop for his services.

2. Because His Honor erred in holding that the plaintiff and the servant, for the loss of whose services the action was brought, were co-partners, it not having been clearly established what were the terms of the contract under which the said servant was employed.

3. Because His Honor erred in ordering a non-suit when plaintiff had examined but one witness, and before he had been permitted to go to trial.

4. Because His Honor ordered a non-suit when, it is respectfully submitted, he had no right to do so for any cause.

*Fraser*, for plaintiff in error.

*Galluchat*, contra.

May 16, 1870. The opinion of the Court was delivered by

WRIGHT, A. J. This was an action brought to recover damages which plaintiff claimed to have sustained by reason of a gunshot wound, charged to have been inflicted by defendant upon one Henry Burgess, who was a contractor with plaintiff, in common with other persons, for a share of the crop, which all parties to the contract were laboring to raise at the time the gunshot wound was said to have been inflicted upon the said Henry Burgess.

It was claimed, by plaintiff, that the said Henry Burgess was his servant, inasmuch as he had contracted with him to raise a crop.

The relation of master and servant, as it existed in England, was wholly different from the relation of employer and employed as it exists in this country.  At common law, in England, the master might bring an action for damages against a third party for any loss he might have sustained by reason of such party unlawfully injuring or interfering with his servant or servants; but this power, given the master, was only to be exercised toward menial servants—*domestics infra mænia.*  It was a relation which the common law classed with the  lation of " parent and child."  The master was held to stand in *loco parentis.*  No such relation existed between plaintiff and Henry Burgess.  In Pennsylvania, in a case under the intestate law of April, 1794, in which a preference is  given to the wages of servants, the Courts have restricted the term " servant " used in the Act to " persons employed in the house and  about the intestate's person," in order that when disease had rendered the master helpless, there might be an additional reason to attention on the part of the domestic or menial.  A case arose in which a bar-keeper brought suit for his wages, and Chief Justice Gibson and Justice Duncan, of the Supreme Court, decided that he had preference, under the law, because his position as bar-keeper brought him within the term " servant," as his duties as such made him a domestic.— *Boniface* vs. *Scott*, 3 S. and R., 352.

Chief Justice Gibson says, in Pennsylvania none are called " servants whose persons are not subjected to the  coercion of the master, whether the business in which they are  employed be servile or not.  No person to whom wages *could* be due for his services would endure the name, as it would be considered  offensive, and a term of reproach.  I take all who are employed for hire in the domestic concerns of the family, in whatever station they may be, to  be servants, entitled to a preference under the  Act.  Neither do I apprehend it to be necessary that the occupation of such persons should be exclusively confined to the family.

" The clerk in a counting  house, &c., is exclusively concerned with the occupation or trade by which his employer gets his living; and there being nothing of a domestic cast in the nature of  his services, he would not fall within the Act.  If, in this country, a tavern were a  separate establishment, unconnected with the domestic scene, I should suppose the plaintiff  not entitled to a preference; but the contrary is the fact; with, perhaps, the exception of one or two large establishments in Philadelphia, the concerns of the family are so blended that it is impossible to separate them," &c., &c.

In the same case, Justice Duncan says : " The term 'servants,' whose wages, under the Act of 1794, are ranked with physic and funeral expenses, to be paid out of the intestate's estate, has received a judicial construction in *ex parte Measan,* 5 Binn., 167. It has been held to embrace those only who, in common parlance, are called servants; that is, as I understand the opinion of the Court, hirelings, who make a part of a man's family, employed for *money* to assist in the economy of the family, or in matters connected with it."

Henry Burgess being exclusively concerned in the cultivation of the soil and the proceeds arising therefrom, and there being no domestic cast within the nature of his service, he does not fall within the class to which the term "servant" can, in any sense, be applied. He was a party to the contract, and liable for any breach of good faith on his part to comply with the terms of that contract; and plaintiff being also a party to the same contract, sustained the same relation to Henry Burgess that Henry Burgess did to him ; therefore, each was *sui juris,* and neither the servant of the other.

Henry Burgess being a free man, and competent to make a contract, is responsible for his own actions, and has the legal right of action against defendant for any private injury he has sustained at his hands. As each of the parties to the contract contributed his special portion of the means necessary to the production of the crop, and each was to receive his special portion after an equitable division, if there was a loss it was a common loss; and if the defendant committed an unlawful act which was the cause of such loss, then the parties to the contract, severally, have the legal right of action against the defendant for damages.

This Court, holding that on the statement of the plaintiff he had no cause of action, it made no difference at what stage of the case the Judge below ordered the non-suit, and his interposition, stated in the brief, did not prejudice the plaintiff.

The motion is dismissed.

*Moses,* C. J., concurred.

WILLARD, A. J. I concur with the majority of the Court in their judgment on the ground that if the rule of the common law, sanctioning a suit by the master for an injury to the servant, is at all applicable as those relations exist in this country, still it would be necessary to extend the scope of the rule in order to embrace a case of one performing agricultural labor for a compensation fixed,

to consist of a definite portion of the crop to be raised by the aid of such labor. In such a case the master has not an entire interest in the services of his laborer, but the latter has an interest in the ratio of the share of the crop due him by the contract of employment. In this respect the relation is not such as can warrant the application of the rule of the common law contended for in this case. I do not regard the present case as rendering any expression necessary as to whether that rule is applicable in this country to a case of hiring for wages, nor as to the class of persons properly falling within the designation of servants hired for wages.