224 So.2d 15 (1969)
BONFANTI INDUSTRIES, INC.
v.
TEKE, INC., et al.
No. 7724.
Court of Appeal of Louisiana, First Circuit.
May 26, 1969.
Rehearing Denied July 2, 1969.
*16 Donn Moss, of Hebert, Moss & Graphia, Baton Rouge, for appellant.
Bailey E. Chaney, Baton Rouge, for appellees.
Before LOTTINGER, ELLIS and BAILES, JJ.
ELLIS, Judge.
Plaintiff Bonfanti Industries, Inc. entered into a lease purchase agreement with Teke, Inc. by virtue of which a boat, motor, and trailer were leased to Teke. This suit was originally brought under that lease because of the alleged failure of Teke to make the rental payments provided for therein, as well as for certain other damages. To the petition, Teke filed a reconventional demand in which it alleged that Carl Kemp Tricou II, an officer and employee of Teke, died as a result of injuries received when the boat struck a tree. It is alleged that his death was caused by a breach of warranty of the lessor in failing to provide a safe and seaworthy vessel in certain respects. The reconventional demand further alleges that Mr. Tricou was a key man in Teke's business, and that as a result of his death, Teke suffered a loss amounting to $250,000.00. Judgment in that amount was prayed for against Bonfanti, Inc. The reconventional demand was filed on August 24, 1967, and the death occurred on April 24, 1966.
To the reconventional demand, exceptions of no cause of action and of prescription were filed by plaintiff. These exceptions were maintained, and the reconventional demand dismissed. From the judgment dismissing the reconventional demand, Teke has taken this appeal.
Teke bases its cause of action on Article 174 of the Civil Code, which reads as follows:
"The master may bring an action against any man for beating or maiming his servant, but in such case he must assign as a cause of action, his own damage arising from the loss of his service, and this loss must be proved upon the trial."
Article 174 is found in Title VI of the Code, entitled "Of Master and Servant". This article has never before been construed by the courts of this state. It provides a cause of action to a master against one who has deprived him of the services of his servant, by maiming or beating the servant, to recover his damages from the loss of the services. If the relationship of master and servant, within the meaning of the codal provisions, exists between Teke, Inc. and the decedent, the reconventional demand states a cause of action.
In the Civil Code of 1808, in which Article 174, supra, first appears as Article 11, p. 38, the categories of free servants are given as follows:
"Art. 3. There are two sorts of free servants in this territory, to wit:
"Servants properly so called, or those who let or engage themselves to another, to be employed at some ordinary or hard labor; such are workmen, laborers, and all those who engage to serve in husbandry or upon plantations;
"And apprentices, who are those who engage to serve some person for the purpose of learning some art, trade or profession.
"Art. 4. When a person has bound himself to serve another during a settled time, for a certain sum of money paid, such a contract being equivalent to a sale, the engagement resulting therefrom, is much more strict and rigorous than that which is entered into by persons who merely let their daily services for certain wages.

*17 "The obligations of the latter, their extent and limits are defined under the title of letting and hiring."

In the Civil Code of 1825, the above provisions were enacted as Article 157, as follows:
"There are three kinds of free servants in this State, to wit:
"1. Those who only hire out their services by the day, week, month or year, in consideration of certain wages; the rules which fix the extent and limits of those contracts are established in the title of letting and hiring;
"2. Those who engage to serve for a fixed time for a certain consideration, and who are therefore considered not as having hired out but as having sold their services;
"3. Apprentices, that is, those who engage to serve only one, in order to learn some art, trade or profession."
Article 174 appears in the 1825 Code as Article 168. In all three Codes it is identical. Article 164 of the Code of 1870 is likewise identical with Article 157 of the 1825 Code.
The source of Article 174 is nowhere given by the compilers of our Code. It has no parallel in the Code Napoleon or in Las Siete Partidas. Our research has turned up nothing even remotely similar in the Roman Law or in the pre-Codal treatises of Pothier and Domat. However, in 1 W. Blackstone, Commentaries on the Laws of England (9th ed. 1783) at p. 429, we find the following:
"A master may also bring an action against any man for beating or maiming his servant: but in such case he must assign, as a special reason for so doing, his own damage by the loss of his service; and this loss must be proved upon the trial."
It seems obvious, in view of the word for word similarity of the above Article 174, that the compilers of the 1808 Code took their provision from Blackstone. Read in context, it is apparent that the provision was meant to apply to menial, or domestic, servants and apprentices. In giving the foundation of the action, Blackstone said, at page 429:
"The reason and foundation, upon which all this doctrine is built, seem to be the property that every man has in the service of his domestics; acquired by the contract of hiring, and purchased by giving them wages."
Considering all of the above, it seems apparent that Article 174 is only intended to apply to indentured servants, apprentices and others who are bound in the service of an individual for a specific period of time. It was certainly never intended to apply to the class of free servants described in Article 164 of the Civil Code, sub-section 1, whose rights and obligations are covered by Book III, Title IX of the Code, "Of Letting and Hiring". The application of Article 174 to all classes of employees would lead to undesirable social and legal consequences. See G. Jones, Per Quod Servitium Amisit, 74 L.Q.Rev. 39, for a discussion of the history of the application of the rule in England.
For the above reasons, we are of the opinion that the exception of no cause of action filed by Bonfanti was properly sustained. We therefore need not consider the question of prescription presented by this appeal.
In addition, we seriously doubt that Article 174 can stand as the basis for a death action, since it does not specifically provide for same. Plaintiff herein does not fall into any of the categories of persons to whom a death action is permitted by Article 2315, the only codal source for such a proceeding.
The judgment appealed from is affirmed, at the cost of defendant-plaintiff in reconvention, Teke, Inc.
Affirmed.