[L.A. No. 30820. Sept. 18, 1978.]

OFFSHORE RENTAL COMPANY, INC., et al.,
Plaintiffs and Appellants, v.
CONTINENTAL OIL COMPANY, Defendant and Respondent.

**160**

## COUNSEL

Ruston, Nance & DiCaro, Donald A. Ruston and Stephen I. Cohen for Plaintiffs and Appellants.

Shield & Smith, Theodore P. Shield and Gary Robert Gibeaut for Defendant and Respondent.

## OPINION

**TOBRINER, J.**—This case presents a problem of conflict of laws. Plaintiff, a California corporation, sues for the loss of services of a "key" employee, whom defendant negligently injured on defendant's premises in Louisiana. The trial court, applying Louisiana law, concluded that plaintiff could not maintain a cause of action against defendant, and accordingly dismissed the complaint. Plaintiff appeals from the judgment, contending that under California law an employer has a cause of action for negligent injury to a key employee and that the trial court should therefore have applied California law. As we explain, we have concluded that the trial court correctly applied Louisiana law in this case, and thus we affirm the judgment.

Plaintiff Offshore Rental Company, a California corporation, maintains its principal place of business in California, but derives its revenues in large part from leasing oil drilling equipment in Louisiana's Gulf Coast area. Headquartered in New York, defendant Continental Oil Company, a Delaware corporation, does business in California, Louisiana, and other states.

In November 1967, plaintiff opened an office in Houston, Texas, for the purpose of establishing a base closer to the Gulf Coast. In June 1968 plaintiff's vice-president, Howard C. Kaylor, went from that office to

Louisiana to confer with defendant's representatives. During the course of that trip defendant negligently caused injury to Kaylor on defendant's premises in Louisiana.

At the time of his injury, Kaylor was responsible for obtaining contracts for plaintiff's increased business in Louisiana. Although defendant compensated Kaylor for his injuries, plaintiff subsequently filed the underlying action in California to recover $5 million in damages occasioned by the loss of Kaylor's services.[1]

In a bifurcated trial on the issue of choice of law, the trial court found that "[a]ll significant contacts operative in this case [were] in the State of Louisiana with the exception of the fact that plaintiff corporation was a resident of California," and concluded as a matter of law that "[t]he question of whether or not a corporation may maintain an action for damages arising out of personal injuries to [its] employee must be determined by application of the laws of the state of Louisiana which is the state in which all significant operative contacts existed." Because the court found that Louisiana law did not permit the maintenance of such an action, the court granted judgment for defendant.

■ Questions of choice of law are determined in California, as plaintiff correctly contends, by the "governmental interest analysis" rather than by the trial court's "most significant contacts theory." As we announced in *Reich* v. *Purcell* (1967) 67 Cal.2d 551, 553 [63 Cal.Rptr. 31, 432 P.2d 727], under the governmental interest analysis approach, the forum in a conflicts situation "must search to find the proper law to apply based upon the interests of the litigants and the involved states." As we shall explain, however, we have concluded that despite its analytic error, the trial court correctly dismissed plaintiff's cause of action.

■ The matter presently before us involves two states: California, the forum, a place of business for defendant, as well as plaintiff's state of incorporation and principal place of business; and Louisiana, the locus of the business of both plaintiff and defendant out of which the injury arose, and the place of the injury.[2] ■ As we pointed out in our decision in *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666], however, the fact that two states are involved does not in itself

---

[1]Plaintiff's first amended complaint sought $5 million in "general damages"; special damages for loss of profits and for "d[i]minution and depreciation of value" according to proof; costs of suit; and such other relief as deemed proper.

[2]Neither party has urged that the law of Delaware or Texas is applicable.

indicate that there is a "conflict of laws" or "choice of laws" problem. As we stated in *Hurtado*, "[t]here is obviously no problem where the laws of the two states are identical." (11 Cal.3d at p. 580.)

Here, however, the laws of Louisiana and California are not identical. In the leading case interpreting Louisiana law, *Bonfanti Industries, Inc.* v. *Teke, Inc.* (La.App. 1969) 224 So.2d 15 (affd. (1969) 254 La. 779 [226 So.2d 770]), a Louisiana corporation, relying on Louisiana Civil Code article 174, brought suit for the loss of services of one of its key officers occasioned by the Louisiana defendant's negligence. Although article 174 provides that "The master may bring an action against any man for beating or maiming his *servant*" (italics added), the Louisiana court held that the *corporate plaintiff* could state no cause of action in modern law for the loss of services of its officer. (See also *Baughman Surgical Assoc., Ltd.* v. *Aetna Cas. & Sur. Co.* (La.App. 1974) 302 So.2d 316; *Roberie* v. *Safeco Insurance Company of America* (La.App. 1973) 282 So.2d 834.)

On the other hand, expressions in the California cases, although chiefly dicta, support the present plaintiff's assertion that California Civil Code section 49 grants a cause of action against a third party for loss caused by an injury to a key employee due to the negligence of the third party.[3] Section 49 provides that "The rights of personal relations forbid: . . . [¶] (c) Any injury to a servant which affects his ability to serve his master . . . ." Plaintiff contends that the master-servant relation protected by section 49 encompasses plaintiff's employment relationship with its injured vice-president, and thus that section 49 grants a cause of action against defendant for damages to plaintiff caused by defendant's negligence.[4]

---

[3]Section 49 provides in full, "The rights of personal relations forbid: [¶] (a) The abduction or enticement of. a child from a parent, or from a guardian entitled to its custody; [¶] (b) The seduction of a person under the age of legal consent; [¶] (c) Any injury to a servant which affects his ability to serve his master, other than seduction, abduction or criminal conversation."

[4]See, e.g., *Darmour Prod. Corp.* v. *H. M. Baruch Corp.* (1933) 135 Cal.App. 351 [27 P.2d 664], in which a movie producer sued under section 49 for the loss of services of one of its actresses occasioned by a third party's negligence. The producer alleged that the actress had appeared in a leading part in a picture under production for which other actors were employed under contract and upon which large sums of money had been expended, and that the actress could not "easily" be replaced. While the Court of Appeal upheld defendant's special demurrer for failure to specify damages, the court stated in dictum "not only that such right of action [under section 49] exists in California, but that the relationship of master and servant existed between the injured motion picture actress and plaintiff in the instant case." (135 Cal.App. at p. 353.) See also *Fifield Manor* v. *Finston*

If we assume, for purposes of analysis, that section 49 does provide an employer with a cause of action for negligent injury to a key employee, the laws of California and Louisiana are directly in conflict. ▮ Nonetheless, "[a]lthough the two potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied. . . . 'When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.' (Currie, Selected Essays on The Conflict of Laws (1963) p. 189.) [Fn. omitted.]" (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d at p. 580.)

We must therefore examine the governmental policies underlying the Louisiana and California laws, "preparatory to assessing whether either or both states have an interest in applying their policy to the case." (Kay, *Comments on Reich* v. *Purcell* (1968) 15 UCLA L.Rev. 584, 585.) Only if each of the states involved has a "legitimate but conflicting interest in applying its own law" will we be confronted with a "true" conflicts case. (*Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 319 [128 Cal.Rptr. 215, 546 P.2d 719].)

▮ Turning first to Louisiana,[5] we note that Louisiana's refusal to permit recovery for loss of a key employee's services is predicated on the view that allowing recovery would lead to "undesirable social and legal consequences." (*Bonfanti Industries, Inc.* v. *Teke, Inc., supra,* 224 So.2d at p. 17.) We interpret this conclusion as indicating Louisiana's policy to

---

(1960) 54 Cal.2d 632, 636 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; *Earley* v. *Pacific Electric Ry. Co.* (1917) 176 Cal. 79 [167 P. 513]; *Boyson* v. *Thorn* (1893) 98 Cal. 578, 582 [33 P. 492], disapproved on other grounds in *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 37-39 [112 P.2d 631]; *Union Paving Co.* v. *East Del Paso Heights* (1963) 217 Cal.App.2d 772, 778 [31 Cal.Rptr. 915], hearing denied. Compare *Standard Oil Co.* v. *United States* (9th Cir. 1946) 153 F.2d 958, affirmed (1947) 332 U.S. 301 [91 L.Ed. 2067, 67 S.Ct. 1604]; *Sharfman* v. *State of California* (1967) 253 Cal.App.2d 333 [61 Cal.Rptr. 266, 36 A.L.R.3d 1370].

[5]Although, as plaintiff contends, defendant did not in fact "demonstrate" Louisiana's policies and interests in the application of Louisiana law, we may make our own determination of those policies and interests, without taking "evidence" as such on the matter. Plaintiff's contention rests on an unduly literal interpretation of our statement in *Hurtado* v. *Superior Court, supra,* 11 Cal.3d 574, 581, that "generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." We note in this regard that Evidence Code section 452 expressly provides that "Judicial notice may be taken of . . . [¶] (a) The decisional, constitutional, and statutory law of any state of the United States. . . ."

protect negligent resident tortfeasors acting within Louisiana's borders from the financial hardships caused by the assessment of excessive legal liability or exaggerated claims resulting from the loss of services of a key employee. Clearly the present defendant is a member of the class which Louisiana law seeks to protect, since defendant is a Louisiana "resident" whose negligence on its own premises has caused the injury in question. Thus Louisiana's interest in the application of its law to the present case is evident: negation of plaintiff's cause of action serves Louisiana's policy of avoidance of extended financial hardship to the negligent defendant.

Nevertheless, we recognize as equally clear the fact that application of California law to the present case will further California's interest. California, through section 49, expresses an interest in protecting California employers from economic harm because of negligent injury to a key employee inflicted by a third party. Moreover, California's policy of protection extends beyond such an injury inflicted within California, since California's economy and tax revenues are affected regardless of the situs of physical injury. Thus, California is interested in applying its law in the present case to plaintiff Offshore, a California corporate employer that suffered injury in Louisiana by the loss of the services of its key employee.[6]

Hence this case involves a true conflict between the law of Louisiana and the law of California. In *Bernhard* v. *Harrah's Club, supra,* we described the proper resolution of such a case. We rejected the notion that in a situation of true conflict the law of the forum should always be applied. Instead, as we stated, "Once [a] preliminary analysis has identified a true conflict of the governmental interests involved as applied to the parties under the particular circumstances of the case, the 'comparative impairment' approach to the resolution of such conflict

---

[6]While this protection of the employer is the most rational policy that can be attributed to California, it is not the only one possible. The sparse legislative history of section 49 suggests that the Legislature may have retained the statutory action for injury to a servant in the belief that this statutory cause of action was necessary in order to preserve an employer's right of subrogation under the workers' compensation law. (See Governor's Recommendation to Assem. and Sen. that Assem. Bill No. 1699 be amended (May 12, 1939) 1 Assem.J. (1939 Reg. Sess.) p. 2086. Compare Stats. 1939, ch. 1103, § 5, p. 3037, with Stats. 1939, ch. 128, § 1, p. 1245.) As more recent cases make clear, however, the specific subrogation statutes of the workers' compensation law are sufficient, in themselves, to establish the employer's right to subrogation (see Lab. Code, §§ 3850-3864; *County of San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862 [140 Cal.Rptr. 638, 568 P.2d 363]), and thus section 49 plays no substantial role in encouraging employers to meet their responsibility under the workers' compensation law. Moreover, the present defendant has compensated plaintiff's employee for his injuries; the record indicates no claim by defendant for indemnity.

seeks to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state. This analysis proceeds on the principle that true conflicts should be resolved by applying the law of the state whose interest would be the more impaired if its law were not applied." (16 Cal.3d 313, 320.)

As Professor Horowitz has explained, this analysis does not involve the court in "weighing" the conflicting governmental interests "in the sense of determining which conflicting law manifest[s] the 'better' or the 'worthier' social policy on the specific issue. An attempted balancing of conflicting state policies in that sense . . . is difficult to justify in the context of a federal system in which, within constitutional limits, states are empowered to mold their policies as they wish." (Fn. omitted.) (Horowitz, *The Law of Choice of Law in California—A Restatement* (1974) 21 UCLA L.Rev. 719, 753.)

Rather, the resolution of true conflict cases may be described as "essentially a process of allocating respective spheres of lawmaking influence." (Baxter, *Choice of Law and the Federal System* (1963) 16 Stan.L.Rev. 1, 11-12.) The process of allocation demands several inquiries. First, while "[i]t is not always possible to say fairly whether [the] policy [underlying a state's law] is one that was much more *strongly held* in the past than it is now, . . . this ground of analysis should not be ignored." (Italics added.) (Von Mehren & Trautman, The Law of Multistate Problems (1965) p. 377.)

Professor Freund has pointed out that "Statutes [in a domestic case], by reason of their pattern or their prevalence, may evidence a legal climate of opinion which makes less oppressive the responsibility of the judge in choosing between two inferences from a statute or between two possible rules of law. [Fn. omitted.] A similar resort may be made in multistate cases. *If one of the competing laws is archaic and isolated in the context of the laws of the federal union, it may not unreasonably have to yield to the more prevalent and progressive law, other factors of choice being roughly equal.* A married woman's disability to make a contract, imbedded in the law of one state, may be carried away by the current if contact is made with the main stream in another state. Perhaps one of the functions of conflict-of-laws decisions is to serve as growing pains for the law of a state, at all events in a federation such as our own." (Italics added.) (Freund, *Chief Justice Stone and the Conflict of Laws* (1946) 59 Harv.L.Rev. 1210, 1216.)

Thus the current status of a statute is an important factor to be considered in a determination of comparative impairment: the policy underlying a jurisdiction's law may be deemed "attenuated and anachronistic and properly . . . be limited to domestic occurrences in the event of [a multistate] clash of interests." (Freund, *Chief Justice Stone, supra,* 59 Harv.L.Rev. 1210, 1224.) Moreover, a particular statute may be an antique not only in comparison to the laws of the federal union, but also as compared with other laws of the state of its enactment. Such a statute may be infrequently enforced or interpreted even within its own jurisdiction, and, as an anachronism in that sense, should have a limited application in a conflicts case.

Another chief criterion in the comparative impairment analysis is the "maximum attainment of underlying purpose by all governmental entities. This necessitates identifying the focal point of concern of the contending lawmaking groups and ascertaining the *comparative pertinence* of that concern to the immediate case." (Italics added.) (Baxter, *Choice of Law, supra,* 16 Stan.L.Rev. 1, 12.) The policy underlying a statute may be less "comparatively pertinent" if the original object of the statute is no longer of pressing importance: a statute which was once intended to remedy a matter of grave public concern may since have fallen in significance to the periphery of the state's laws. As Professor Currie observed in another context, "If the truth were known, it would probably be that [those few states which have retained the archaic law of abatement have done so] simply because of the proverbial inertia of legal institutions, and that no real policy is involved." (Fn. omitted.) (Currie, Selected Essays on The Conflict of Laws, *supra,* p. 143.)

Moreover, the policy underlying a statute may also be less "comparatively pertinent" if the same policy may easily be satisfied by some means other than enforcement of the statute itself. Insurance, for example, may satisfy the underlying purpose of a statute originally intended to provide compensation to tort victims. The fact that parties may reasonably be expected to plan their transactions with insurance in mind may therefore constitute a relevant element in the resolution of a true conflict.

In sum, the comparative impairment approach to the resolution of true conflicts attempts to determine the relative commitment of the respective states to the laws involved. The approach incorporates several factors for consideration: the history and current status of the states' laws; the function and purpose of those laws.

■ Applying the comparative impairment analysis to the present case, we first probe the history and current status of the laws before us. The majority of common law states[7] that have considered the matter do not sanction actions for harm to business employees,[8] recognizing that even if injury to the master-servant relationship were at one time the basis for an action at common law, the radical change in the nature of that relationship since medieval times nullifies any right by a modern corporate employer to recover for negligent injury to his employees.[9] With the decision in *Bonfanti Industries, Inc.* v. *Teke, Inc., supra,* discarding the obsolete concept of recovery for loss of a servant's services,[10] the Louisiana courts have thus joined the "main stream" of

[7]Besides California, at least four other code states have similar statutes prohibiting injury to a servant: Georgia Code Annotated (1968) title 105, section 107; 4 Montana Revised Code Annotated (1977 supp.) title 64, section 209; 3 North Dakota Century Code Annotated (1971) title 14, section 14-02-06; Oklahoma Statutes Annotated (1977 supp.) title 76, section 8. Only in Oklahoma does a reported decision discuss the statutory cause of action. See *Johnson* v. *Harris* (1940) 187 Okla. 239 [102 P.2d 940] (dictum).

[8]See, e.g., *Preiser Scientific, Inc.* v. *Piedmont Aviation, Inc.* (4th Cir. 1970) 432 F.2d 1002 (W.Va. law), certiorari denied (1971) 401 U.S. 1009 [28 L.Ed.2d 545, 91 S.Ct. 1253]; *The Federal No. 2* (2d Cir. 1927) 21 F.2d 313; *Phoenix Professional Hockey Club, Inc.* v. *Hirmer* (1972) 108 Ariz. 482 [502 P.2d 164, 165]; *Steele* v. *J and S Metals, Inc.* (1974) 32 Conn.Super. 17 [335 A.2d 629]; *Frank Horton & Co., Inc.* v. *Diggs* (Mo.App. 1976) 544 S.W.2d 313; *ITT* v. *Public Service Elec. Co.* (1914) 86 N.J.L. 26 [90 A. 1062]; *Ferguson* v. *Green Island Contracting Corp.* (1974) 44 App.Div.2d 358 [355 N.Y.S.2d 196], affirmed (1975) 36 N.Y.2d 742 [368 N.Y.S.2d 163, 328 N.E.2d 792]; *Snow* v. *West* (1968) 250 Ore. 114 [440 P.2d 864]; *City of Philadelphia* v. *Philadelphia Rapid Transit Co.* (1940) 337 Pa. 1 [10 A.2d 434]. See also cases cited in Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law* (1966) 54 Cal.L.Rev. 1478, 1489.
 Only slight and scattered modern precedent supports the master's common law action for negligent harm to a servant. See *Jones* v. *Waterman S. S. Corporation* (3d Cir. 1946) 155 F.2d 992 (Pa. law); *Dayton Power & Light Co.* v. *Westinghouse E. & Mfg. Co.* (6th Cir. 1923) 287 Fed. 439 (Ohio law); *Fluker* v. *Georgia Railroad & Banking Co.* (1889) 81 Ga. 461 [8 S.E. 529, 531]; *Cain* v. *Vollmer* (1910) 19 Idaho 163 [112 P. 686]; *Chelsea Moving & Trucking Co.* v. *Ross Towboat Co.* (1932) 280 Mass. 282 [182 N.E. 477, 478-479]; *Burgess* v. *Carpenter* (1870) 2 S.C. 7, 10; *St. Johnsbury & Lake Champlain R. Co.* v. *Hunt* (1882) 55 Vt. 570.

[9]See, e.g., *Snow* v. *West, supra,* 440 P.2d 864, 865; *City of Philadelphia* v. *Philadelphia Rapid Transit Co., supra,* 10 A.2d 434, 435-436; *Gramby* v. *Philadelphia Trans. Co.* (1960) 22 Pa.D. & C. 2d 366, 369-370; see also Restatement Second Agency (appen.) section 316, reporter's notes, pages 534, 537.

[10]In its decision precluding the corporate plaintiff's cause of action, the Louisiana court emphasized the hoary origins of article 174. Delving into history, the court identified Blackstone as the source of the provision: " 'The reason and foundation, upon which all this doctrine is built, seem to be the property that every man has in the service of his domestics; acquired by the contract of hiring, and purchased by giving them wages.' " (*Bonfanti Industries, Inc.* v. *Teke, Inc., supra,* 224 So.2d at p. 17, quoting 1 Blackstone's Commentaries 429.) Concluding that article 174 was meant to apply only to "indentured servants, apprentices and others who are bound in the service of an individual for a specific period of time," and not to "the class of free servants," the court held that the corporate plaintiff could state no cause of action for the loss of services of its key officer.

American jurisdictions: Louisiana law accords with the common law's consistent refusal generally to recognize a cause of action based on negligent, as opposed to intentional, conduct which interferes with the performance of a contract between third parties or renders its performance more expensive or burdensome. (See, e.g., *Robins Dry Dock & Repair Co.* v. *Flint* (1927) 275 U.S. 303, 308-309 [72 L.Ed. 290, 292-293, 48 S.Ct. 134].)

Indeed California has itself exhibited little concern in applying section 49 to the employer-employee relationship: despite the provisions of the antique statute, no California court has heretofore squarely held that California law provides an action for harm to business employees, and no California court has recently considered the issue at all. If, as we have assumed, section 49 does provide an action for harm to key corporate employees, in Professor Freund's words the section constitutes a law "archaic and isolated in the context of the laws of the federal union." We therefore conclude that the trial judge in the present case correctly applied Louisiana, rather than California, law, since California's interest in the application of its unusual and outmoded statute is comparatively less strong than Louisiana's corollary interest, so lately expressed, in its "prevalent and progressive" law.

An examination of the function and purpose of the respective laws before us provides additional support for our limitation of the reach of California law in the present case. The accident in question occurred within Louisiana's borders; although the law of the place of the wrong is not necessarily the applicable law for all tort actions (*Reich* v. *Purcell, supra,* 67 Cal.2d 551, 555), the situs of the injury remains a relevant consideration. At the heart of Louisiana's denial of liability lies the vital interest in promoting freedom of investment and enterprise *within Louisiana's borders,* among investors incorporated both in Louisiana and elsewhere. The imposition of liability on defendant, therefore, would strike at the essence of a compelling Louisiana law.

Furthermore, in connection with our search for the proper law to apply based on the "maximum attainment of underlying purpose by all governmental entities," we note the realistic fact that insurance is available to guard against the exigencies of the present case. As one commentator has remarked, "[T]he fact that the potential [tort] victim does not usually calculate his risk and plan his insurance program accordingly, hardly detracts from the consideration that he can fairly be

made to bear the consequences of not doing so." (Ehrenzweig, A Treatise on the Conflict of Laws (1962) pp. 575-576.) The present plaintiff, a business corporation, is a potential "victim" peculiarly able to calculate such risks and to plan accordingly. Plaintiff could have obtained protection against the occurrence of injury to its corporate vice-president by purchasing key employee insurance, certainly a reasonable and foreseeable business expense.[11] By entering Louisiana, plaintiff "exposed [it]self to the risks of the territory," and should not expect to subject defendant to a financial hazard that Louisiana law had not created. (Cavers, The Choice-of-Law Process (1965) p. 147.)[12]

Although it is equally true that defendant is a business corporation able to calculate the risks of potential tort liability and to plan accordingly, because defendant's operations in Louisiana presumably involved dealing with key employees of companies incorporated in diverse states defendant would most reasonably have anticipated a need for the protection of premises' liability insurance based on Louisiana law. Accordingly, under these circumstances, we conclude that the burden of obtaining insurance for the loss at issue here is most properly borne by the plaintiff corporation.

We have explained that Louisiana law precludes a corporate employer from stating a cause of action for losses caused by negligent injuries to a key employee. We have assumed for the purposes of the present case that California law grants a cause of action for such injuries, and thus directly conflicts with the law of Louisiana. Upon examination of the nature and purpose of the states' respective laws, however, we have determined that the California statute has historically been of minimal importance in the fabric of California law, and that the Louisiana courts have recently interpreted their analogous Louisiana statute narrowly in light of that statute's obsolescence. We do not believe that California's interests in the application of its law to the present case are so compelling as to prevent an accommodation to the stronger, more current interest of Louisiana. We conclude therefore that Louisiana's interests would be the more impaired if its law were not applied, and consequently that Louisiana law governs the present case. Since the law of Louisiana provides no cause of

---

[11]See, e.g., *Baughman Surgical Assoc., Ltd.* v. *Aetna Cas. & Sur. Co., supra,* 302 So.2d 316, 318; *Ferguson* v. *Green Island Contracting Corp., supra,* 355 N.Y.S.2d 196, 198; 3 Couch on Insurance (2d ed. 1963) section 24:147, pages 260-262.

[12]We emphasize that plaintiff did not expose itself to any risk that Louisiana encourages negligent conduct by resident corporations. On the contrary, as a consequence of Louisiana's general policy against negligent behavior, defendant has already been obliged to compensate plaintiff's employee for his personal injuries.

action for the present plaintiff, we hold that the trial court correctly dismissed plaintiff's cause of action.

The judgment is affirmed.

Bird, C. J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.