## WESTERN INTERNATIONAL SYNDICATION CORPORATION, Plaintiff–Appellee,

v.

## GULF INSURANCE COMPANY, Defendant–Appellant.

No. 05–55092.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2007.

Filed Feb. 26, 2007.

ed by 9th Cir. R. 36–3.

Jeffrey Raskin, Esq., Morgan Lewis & Bockius, LLP, San Francisco, CA, for Plaintiff–Appellee.

Anderson McPharlin & Conners, LLP, Los Angeles, CA, for Defendant–Appellant.

Before: FERGUSON, SILER *, and HAWKINS, Circuit Judges.

## MEMORANDUM **

In December 2002, the Apollo Theater Foundation ("Apollo") initiated a lawsuit ("Underlying Action") against Western International Syndication Corporation ("Western") in the Southern District of New York. Apollo alleged that Western had embarked on a systematic campaign of misconduct, *inter alia* making misrepresentations concerning Apollo's television program, "It's Showtime at the Apollo" or "Showtime at the Apollo" ("Apollo Show"), and using Apollo's trademarks in connection with a competing program. On March 8, 2004, Western notified Gulf Insurance Company ("Gulf")[1] of the Underlying Action and requested defense and indemnity pursuant to a commercial lines insurance policy ("the policy") that Gulf had issued to Western. When Gulf refused to provide a defense, Western filed this declaratory action in state court, and Gulf then removed to federal court.

The District Court held, *inter alia*, that Gulf had a duty to defend Western against Apollo's deceptive acts and practices claim under New York law, *see* N.Y. Gen. Bus. Law § 349 (McKinney 1984), and that, because Gulf failed to show any prejudice, the insurer could not avoid liability based on Western's late notice. We affirm.

### STANDARD OF REVIEW & CHOICE OF LAW

Where the underlying facts are undisputed, interpretation of an insurance policy is a matter of law. *Cort v. St. Paul Fire & Marine Ins. Co.*, 311 F.3d 979, 982 (9th Cir.2002). This Court reviews de novo the District Court's summary judgment decision, as well as substantive determinations of federal and state law. *Id.* at 983; *Dorr v. County of Butte*, 795 F.2d 875, 876–77 (9th Cir.1986).

■ As this is a diversity case from the Central District of California, we apply the same choice of law rules as would a California state court. *Klaxon Co. v, Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). California law applies where no party has "suggested that the law of a foreign state should furnish the rule of decision." *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666, 670 (1974) (internal punctuation omitted).

### DISCUSSION

**I. The District Court Did Not Err in Ruling that Gulf Had a Duty to Defend Under the Personal Injury Provision of the Policy.**

■ A court determines whether a liability insurer owes an insured a duty to

---

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Defendant–Appellant Travelers Indemnity Company is Gulf's successor in interest by merger. This memorandum refers to both entities as "Gulf".

defend by comparing the factual allegations in the third-party complaint with the terms of the insurance policy. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168, 176–77 (1966). Under the policy at issue, Gulf had a duty to defend Western against third-party allegations of "personal injury," including that Western had, through oral or written publication, "disparage[d] a person's or organization's goods, products, or services." New York courts[2] have previously recognized as disparagement the intentional utterance of an injurious falsehood that causes the plaintiff to suffer actual damage. *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F.Supp. 1201, 1208 (S.D.N.Y.1986) (citations omitted) (interpreting New York law); *see also* Restatement (Second) of Torts § 629 cmt. c (1977); Black's Law Dictionary 503 (8th ed.2004).

In the Underlying Action, Apollo alleged that Western requested extensions from the United States Patent and Trademark Office to oppose Apollo's trademark registration applications; that it did so solely for the purpose of disrupting the production financing of the Apollo Show; and that Western, for the purpose of placing a cloud on the title of the Apollo Show trademark, informed banking institutions that the ownership rights of the trademark were contested. According to Apollo, Western's actions succeeded in making it difficult for Apollo to obtain insurance necessary to secure production financing. Apollo further alleged that Western made "statements to television stations and broadcasters to the effect that ... the Apollo Show w[ould] not be distributed for the 2003/2004 broadcast season."

The statements allegedly made by Western suggested that the Apollo Show would no longer be in existence, or that its production would be substantially limited. They also were "intended by [their] publisher to be understood or [are] reasonably understood to cast doubt upon the existence or extent of [the Apollo's] property in ... intangible things, or upon their quality." *Payrolls & Tabulating, Inc. v. Sperry Rand Corp.*, 22 A.D.2d 595, 257 N.Y.S.2d 884, 886 (N.Y.App.Div.1965) (citing Restatement (First) of Torts § 629 (1938)). The allegations therefore constitute disparagement. *See Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 123 Cal.Rptr.2d 256, 269 (2002); *Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F.Supp.2d 296, 304 (W.D.N.Y.1998).

## II. The District Court Did Not Err in Holding that the Trademark Exclusion Did Not Apply.

■ Insurance policy exclusions are narrowly construed, especially where the coverage portion of a policy would lead an insured to reasonably expect coverage. *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1213 (2003). The policy in this case excludes from coverage personal injuries regarding "[i]nfringement of copyright or trademark." While the vast majority of Apollo's claims do involve trademark issues, the allegations that Western made disparaging statements are distinct, and the cases cited by Gulf are inapposite. *Cf. Indus. Indem. Co. v. Apple Computer*, 79 Cal.App.4th 817, 95 Cal.Rptr.2d 528, 538

---

**2.** While the interpretation of the insurance contract is governed by California law, the parties agree that the tort law of New York determines whether the alleged facts give rise to a potentially covered claim. *See AMB Indus., Inc. v. Zurich Am. Ins. Co.*, No. C 05–3480, 2006 WL 2595944, at * 19 (N.D.Cal. Sept.11, 2006) (citing *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App.4th 492, 20 Cal.Rptr.2d 376, 384–86 (1993)).

(1999) (ruling that insurer could rely on trademark exclusion because "all the facts indicated" that any claims of false designation of origin and unfair competition "arose solely from the conduct by Apple amounting to trademark infringement"); *Super-formance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 332 F.3d 215, 223 (4th Cir.2003) (finding third-party complaint did not allege disparagement of insured's products except as the result of alleged trademark infringement).

Apollo alleges not only that Western contested Apollo's ownership rights but also that it informed banking institutions of this dispute, creating the false impression that Apollo's ownership was in doubt. Apollo also alleged that Western disseminated false information to advertisers regarding limited distribution of the Apollo Show. These factual allegations go beyond the elements of a trademark claim and exceed the scope of the trademark exclusion.

**III. The District Court Did Not Err in Holding That Western's Claims Were Not Barred Despite Its Failure to Give Timely Notice to Gulf.**

Finally, Gulf contends that, because Western failed to provide it with timely notice of the Underlying Action, Gulf has no duty to defend. The District Court found that Gulf failed to show actual prejudice as a result of the late notice, and Gulf does not challenge that finding, so the only question is whether late notice allows an insurer to avoid liability despite a lack of prejudice.

Gulf insists that, under New York law, the failure to notify is fatal regardless of prejudice. Western maintains that California law governs and requires that prejudice be shown before a policy is voided. Unlike states that use a "most significant contacts" approach to conflicts of laws, California applies a three-step "governmental interest" test. *Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal.3d 157, 148 Cal. Rptr. 867, 583 P.2d 721, 723 (1978) (citing *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727, 729 (1967) (en banc)). We therefore consider: (1) whether the states' laws differ; (2) if so, whether there is a true conflict; and (3) if such a conflict exists, which state's interests would be more impaired were the other state's law applied. *See, e.g., Estate of Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir.2005).

**A. Do the Laws of New York and California Differ?**

█ Under the "no-prejudice" rule in New York, if an insurance contract requires notice of an occurrence "as soon as practicable," failure to provide it generally voids coverage even in the absence of prejudice. *Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 794 N.Y.S.2d 704, 827 N.E.2d 762, 764 (2005). California, on the other hand, requires that an insurer demonstrate prejudice in order for untimely notice to vitiate its liability. *Hynding v. Home Accident Ins. Co.*, 214 Cal. 743, 7 P.2d 999, 1002 (1932). The laws do indeed conflict.[3]

---

**3.** The District Court held that the laws of New York and California no longer differ significantly, and it ended its conflict of laws inquiry at this stage. That decision minimized how entrenched is New York's no-prejudice rule. Even if recent rulings have chipped away at the no-prejudice rule, it continues to govern in cases such as this. *See, e.g., Argo,*

794 N.Y.S.2d 704, 827 N.E.2d at 765 (previous decisions upholding insurers' liability despite a lack of timely notice "did not abrogate the no-prejudice rule and should not be extended to cases where the carrier received unreasonably late notice of a claim.... The rationale of the no-prejudice rule is clearly

**594**

### B. Is There a True Conflict?

■ We therefore proceed to step two of the governmental interest analysis, whether there is a true conflict of interests. California is the forum state, and "California's general preference is to apply its own law." *Am. Bank of Commerce v. Corondoni,* 169 Cal.App.3d 368, 215 Cal. Rptr. 331, 333 (1985). Further, the insured is a California corporation that paid taxes and insurance premiums in California, it maintained its primary place of business in California, and it used a California agent to negotiate and purchase its insurance policy. Finally, the policy was executed in California and delivered to Western's place of business in the state.

New York, on the other hand, "can be said to have an interest if the policies underlying its [law] would be advanced when the law is applied to this transaction." *Rosenthal v. Fonda,* 862 F.2d 1398, 1402 (9th Cir.1988). One of the primary rationales for New York's no-prejudice rule is protecting insurers from fraud and collusion, but here there has been no collusion allegation, so this rationale cannot give rise to a true interest. *See Brandon v. Nationwide Mut. Ins. Co.,* 97 N.Y.2d 491, 743 N.Y.S.2d 53, 769 N.E.2d 810, 813–14 (2002). A second rationale behind New York's rule is facilitating settlements, *id.* at 813, but the record reflects that Western offered Gulf opportunities to participate in settlement discussions and Gulf declined.

■ Under the facts of this case, New York does not have an interest significant enough to justify the application of foreign law. Therefore, we need not reach the third step of the governmental interest test. California law governs, and, accord-

ingly, Gulf's failure to demonstrate prejudice prevents it from avoiding liability on the basis of Western's late notice.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the court below.

---

applicable to a late notice of lawsuit under a liability insurance policy.")

