**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| VAROUJAN DEIRMENJIAN; ARIS AGHVAZARIAN; ROBERT DABAGHIAN; MARGUERID JEREDJIAN; KATIA KERMOYAN; PAYLIG KERMOYAN,<br><br>Plaintiffs,<br><br>And<br><br>KHACHIK BERIAN, on Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>DEUTSCHE BANK AG; DRESDNER BANK AG,<br><br>Defendants - Appellees. | No. 10-56359<br><br>D.C. No. 2:06-cv-00774-MMM-RC<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted November 5, 2013

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Pasadena, California

Before: McKEOWN, GOULD, and BYBEE, Circuit Judges.

Khachik Berian and a putative class of California residents of Armenian descent (collectively, "Berian") appeal the district court's grant of summary judgment in favor of Deutsche Bank AG and Dresdner Bank AG (collectively, "the Banks"). Berian alleges that the Banks withheld money from Armenian account-holders following the early twentieth-century Armenian Genocide. On appeal, Berian first argues that the district court erred in finding that California choice-of-law principles required the application of Turkey's statute of repose, which barred the suit. Second, he argues that the district court erred in denying class certification based on its finding that the putative class was not ascertainable. A third ground of appeal—that the district court erred in holding that California Code of Civil Procedure § 354.45, which extended the statute of limitations period for Armenian Genocide claims, was preempted by federal law and the foreign affairs doctrine—was mooted by our decision in *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067 (9th Cir. 2012) (en banc) (striking down § 354.45's sister statute § 354.4 based on field preemption). For the reasons discussed below, we AFFIRM the grant of summary judgment. Accordingly, we do not reach the question of class certification.

The evidence presented to the district court describes the essential facts of the Armenian Genocide. In the early twentieth-century, the government of the Ottoman Empire, led by a group known as the "Young Turks," sought to remove Armenians from the empire. After the start of World War I, the Young Turks began a systematic campaign of deportation and killing of ethnic Armenians, resulting in between 1.5 and 2 million deaths, in what is now called the Armenian Genocide. Berian, the descendent of an Armenian named Hatchik Berian who fled Turkey for Greece during the Genocide, alleges that the Banks "concealed and prevented the recovery of assets which were deposited in accounts with [them] by Armenians prior to World War I and the Armenian Genocide." Berian brought a number of state law claims—for breach of fiduciary duty, unjust enrichment, and negligence, among others—against the Banks in state court. The Banks removed to federal court under the Class Action Fairness Act.

Berian's claims raise intertwined questions regarding the proper statute of limitations and choice of law. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996 (9th Cir. 2006). When determining which country's statute of limitations applies, we first "must decide what choice-of-law rule governs the selection of the statute of limitations. Second, [we] must apply that rule to determine which jurisdiction's limitations law applies. Third, and finally, [we must] determine

3

whether plaintiffs' claims fall within the relevant limitations period." *Id.* at 997

(quoting *Cruz v. United States*, 387 F. Supp. 2d 1057, 1070 (N.D. Cal. 2005)).

A.     *Choice-of-Law Rule*

Since this action was removed to federal court on the basis of diversity

jurisdiction, California's choice-of-law rules apply. *Sims Snowboards, Inc. v.*

*Kelly*, 863 F.2d 643, 645 (9th Cir. 1988).

B.     *Governmental Interest Analysis*

When deciding choice-of-law questions, California applies a three-part

governmental interest test. *See McCann v. Foster Wheeler LLC*, 225 P.3d 516, 524

(Cal. 2010).

> First, the court determines whether the relevant law of each of the
> potentially affected jurisdictions with regard to the particular issue in
> question is the same or different. Second, if there is a difference, the
> court examines each jurisdiction's interest in the application of its
> own law under the circumstances of the particular case to determine
> whether a true conflict exists. Third, if the court finds that there is a
> true conflict, it carefully evaluates and compares the nature and
> strength of the interest of each jurisdiction in the application of its
> own law "to determine which state's interest would be more impaired
> if its policy were subordinated to the policy of the other state" and
> then ultimately applies "the law of the state whose interest would be
> more impaired if its law were not applied."

*Id.* at 527 (quoting *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006)) (internal citations omitted).[1]

With regard to the first step, under California Code of Civil Procedure § 348, which establishes that "there is no limitation" on "actions brought to recover money or other property deposited with any bank," Berian's claims would likely not be time-barred.[2] Under Turkish law, according to undisputed expert testimony before the district court, claims against a bank are absolutely barred ten years from the date of the last request, transaction, or written instruction by the owner of the account, regardless of when the plaintiff discovered the injury or was able to bring

---

[1]Although *McCann* revolved around the choice of law of California and Oklahoma, the governmental interest analysis is the same when the inquiry involves a foreign country. *See Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 734 (7th Cir. 2010) (analyzing governmental interests between California and Taiwan).

[2] While California's borrowing statute, California Code of Civil Procedure § 361, limits § 348 where, as here, the circumstances giving rise to the cause of action occurred outside of California, § 361 "cannot properly be interpreted *to compel* application of the California statute of limitations without consideration of California's generally applicable choice-of-law principles." *McCann*, 225 P.3d at 526–27 (emphasis in original).

suit.[3] Accordingly, California law and Turkish law are at odds at step one of the governmental interest analysis.

At step two of the governmental interests analysis, the court "examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *McCann*, 225 P.3d at 527. The focus of the inquiry is whether tension exists between the two jurisdictions' interests: "Only if each of the states involved has a legitimate but conflicting interest in applying its own law will we be confronted with a true conflicts case." *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 725 (Cal. 1978) (internal quotation marks and citation omitted), *holding modified by I. J. Weinrot & Son, Inc. v. Jackson*, 708 P.2d 682 (Cal. 1985).

"California has a legitimate interest in having a statutory provision that affords a remedy for or a benefit to an injured person or business applied when . . . the injured person or business is a California resident or business, even when the injury-producing conduct occurs outside California." *McCann*, 225 P.3d at 532. On the other hand, Turkey has a legitimate interest in limiting the liability of

---

[3] Turkey's law is most accurately considered a statute of repose and not a statute of limitations, since the former "cuts off a right of action after a specified period of time, irrespective of accrual or even notice that a legal right has been invaded." *McCann*, 225 P.3d at 521 n.2 (quoting *Giest v. Sequoia Ventures, Inc.*, 83 Cal. App. 4th 300, 305 (2000)).

corporations that conduct business within its borders. *Id.* at 530 (recognizing that a state ordinarily has an interest in applying a law "limiting liability for commercial activity" as fair treatment to and an appropriate incentive for "out-of-state companies that conduct business in the state, as well as to businesses incorporated or headquartered within the state"); *see Offshore*, 583 P.2d at 725 (finding that interest of Louisiana in applying law that would bar recovery for Californian employee injured there served "Louisiana's policy of avoidance of extended financial hardship to the negligent defendant"); *Bernhard v. Harrah's Club*, 546 P.2d 719, 722 (Cal. 1976) (noting that two states' differing interests regarding civil liability of tavern keepers were "legitimate but conflicting"); *Cable v. Sahara Tahoe Corp.*, 93 Cal. App. 3d 384, 392 (1979) (concluding that a state's interest in protecting in-state tavern keepers from "ruinous exposure" to litigation brought by out-of-state plaintiffs was legitimate).

Accordingly, California's and Turkey's interests are both legitimate and conflicting at step two of the governmental interest analysis.

At the third and final step of the governmental interest analysis, the court "carefully evaluates and compares the nature and strength of the interest of each jurisdiction . . . to determine which state's interest would be more impaired if its policy were subordinated . . . and then ultimately applies the law of the state whose

7

interest would be more impaired if its law were not applied." *McCann*, 225 P.3d at 527 (quoting *Kearney*, 137 P.3d at 914) (internal quotation marks and citations omitted). Our task at step three "is not to determine whether the [foreign state] rule or the California rule is the better or worthier rule, but rather to decide—in light of the legal question at issue and the relevant state interests at stake—which jurisdiction should be allocated the predominating lawmaking power under the circumstances of the present case." *Id.* at 534. This is "essentially a process of allocating respective spheres of lawmaking influence." *Offshore*, 583 P.2d at 726 (citation omitted).

We have held that "California does not have a substantial interest" in cases where California residents seek the return of bank deposits from foreign banks when those residents made such deposits while living overseas and later moved to California. *Huynh*, 465 F.3d at 1002.

In contrast, California "continue[s] to recognize that a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders." *McCann*, 225 P.3d at 534 (internal citations omitted); *see also Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1182 (2007) (holding Alabama's interests predominant over California's where auto accident occurred in Alabama, even though California resident victim could be financial burden on California)*;*

8

*Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) ("[W]ith respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest.").

In light of the longstanding deference courts show to foreign states to regulate activities therein, we agree with the district court that Turkey's interests in applying its laws to conduct that occurred within its borders, in dissuading forum shopping, and in regulating suits against companies doing business there predominate over California's interests. *See Reich v. Purcell*, 432 P.2d 727, 730 (Cal. 1967) ("[The foreign state where the harm occurred] is concerned with conduct within her borders and as to such conduct she has the predominant interest of the states involved."); *Cable*, 93 Cal. App. 3d at 394 ("The state with the 'predominant' interest in controlling conduct normally is the state in which such conduct occurs and is most likely to cause injury."). Under this analysis, we make no judgment as to whether Turkey's policies are "worthier" or "better" than California's, only that Turkey's interest "would be more impaired if its law were not applied." *McCann*, P.3d at 533, 537. Accordingly, we conclude that Turkey's statute of repose governs.

C.     *Application*

As previously noted, under Turkish law, Berian's claims had to be brought within ten years of the date of the last request, transaction, or written instruction by the owner of the account, regardless of when the plaintiff discovered the injury or was able to bring suit. According to the evidence before the district court, that date would have been by November 1926. Having failed to provide evidence that he did so, Berian's claims are time-barred.

It is unnecessary to reach the question of class certification.

**AFFIRMED.**