*493
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Insurance policies providing Supplementary Uninsured Motorists (SUM) coverage typically require the insured not only to submit a notice of claim but also to transmit promptly to the insurer the summons and complaint in any action the insured brings against a tortfeasor. In many contexts, including SUM coverage, an insured’s failure to furnish timely notice of claim vitiates the contract, and the insurer may rely on this defense regardless of whether it can demonstrate that the insured’s failure operated to its prejudice. Today an insurer asks us, by analogy, to hold that it need not demonstrate prejudice to rely on the defense that the insured forfeited SUM coverage by failing to timely submit the tort action summons and complaint. We decline to take this step, as did the Appellate Division, whose order we now affirm.
 

 
 *494
 
 On March 1, 1997, a motor vehicle driven by Griselda Cancel
 
 [1]
 
 collided with a parked 1985 Buick in which petitioner was a passenger and which was owned and insured by petitioner’s son. Nine days later, petitioner forwarded a sworn “Notice of Intention to Make Claim” to his insurer, respondent Nationwide Mutual Insurance Company. The notice of claim indicated that Cancel negligently struck the Buick, injuring petitioner, and that treating these injuries would cost a sum yet to be determined. The notice also indicated that Cancel drove an “Uninsured Car,” and that petitioner was making his claim under his policy’s “Uninsured Automobile Endorsement.”
 
 [2]
 

 Petitioner sent the notice of claim to his local Nationwide agent. An employee of the agency acknowledged receipt, but evidently did not forward it to Nationwide’s claims department, and Nationwide did not open a file relating to the accident. During the ensuing months, petitioner underwent a series of medical procedures, including surgery, and sought benefits from his son’s insurer, Colonial Penn Insurance Company. After Colonial Penn denied his claim, petitioner submitted a no-fault claim to Nationwide. By December 17, 1997, Nationwide’s no-fault file noted petitioner’s operation; stated Nationwide’s intention to order an injury index to determine whether petitioner had injuries before the accident; and noted “UM/UIM potential * * * due to injuries.” The file also reflected Nationwide’s belief that petitioner had notified it “over 90 days” after the accident, thus forfeiting coverage. Nationwide made no payment on the no-fault claim and eventually closed the no-fault file.
 

 Meanwhile, on September 19, 1997, petitioner brought a personal injury action against Cancel, but did not forward the summons and complaint to Nationwide. Indeed, it was not until over a year later that Nationwide learned of the personal injury action from petitioner’s attorney. Soon afterward, Nationwide sent him a reservation of rights letter, alleging that petitioner was not entitled to SUM coverage both because he had failed to send a timely notice of claim and because he
 
 *495
 
 had not promptly forwarded the personal injury summons and complaint. During the following weeks, petitioner finally did forward those papers, and Nationwide, after internal inquiries, recognized that it was mistaken regarding the notice of claim. Accordingly, in a letter dated December 17, 1998, Nationwide denied coverage solely on the basis of failure to forward the personal injury summons and complaint.
 

 The policy language on which Nationwide relied states that if the insured sues any person “legally responsible for the use of a motor vehicle involved in the accident, a copy of the summons and complaint * * * shall be forwarded immediately to us by the insured * * Other relevant clauses provide that Nationwide pays on an SUM claim only after the limits of liability under other applicable policies are exhausted; that an insured who receives a settlement offer equal to such limits may release the opposing party after notifying Nationwide unless Nationwide advances the insured a sum equal to the offer; and that the insured may not otherwise settle such a suit without Nationwide’s consent. In deference to these latter provisions, petitioner did not immediately accept a January 1999 offer by Cancel’s insurer to settle for her policy limits, but rather notified Nationwide of the offer. That July, after further discussions, Nationwide confirmed that it had denied coverage and that petitioner was “free” to pursue Ms “best interests” in the matter.
 

 On September 27, 1999, petitioner commenced the instant proceeding, pursuant to CPLR 7503 (a), seeking an order to compel Nationwide to arbitrate his SUM claim. Nationwide moved to stay arbitration permanently, and Supreme Court, assuming that petitioner’s failure to provide timely notice of legal action was a sufficient basis for a stay, held a hearing to determine whether Nationwide disclaimed coverage as soon as reasonably possible
 
 (see
 
 Insurance Law § 3420 [d]). Concluding that the interval between when Nationwide ascertained grounds for denial in November 1998 and when it denied coverage the following month was reasonable, Supreme Court dismissed the petition. The Appellate Division reversed, holding, first, that late notice of legal action “will be excused where no prejudice has inured to the insurer,” and, second, that Nationwide had in any event failed to disclaim coverage within a reasonable time (284 AD2d 886, 887-888). We granted leave to appeal and now affirm.
 

 Nationwide relies on cases holding that an insured’s failure to provide timely notice of claim relieves the insurer of its
 
 *496
 
 obligation to perform, whether or not it can show prejudice
 
 (see Security Mut. Ins. Co. v Acker-Fitzsimons Corp.,
 
 31 NY2d 436, 440 [1972]). This is known as a “no-prejudice” exception.
 
 [3]
 
 We have, indeed, followed
 
 Security Mutual,
 
 and the “no-prejudice” exception, when the insurers had received late notice of SUM claims
 
 (see Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso,
 
 93 NY2d 487, 492-493 [1999]). The issue here, however, is whether late notice of legal action should be given the same preclusive effect as late notice of claim. Neither
 
 Mancuso
 
 nor any other decision answers this question, and accordingly we consider whether we should extend the reasoning of
 
 Security Mutual
 
 to this context.
 

 Generally, “one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice” (U
 
 nigard Sec. Ins. Co. v North Riv. Ins. Co.,
 
 79 NY2d 576, 581 [1992]). By allowing insurers to avoid their obligations to premium-paying clients without showing prejudice,
 
 Security Mutual
 
 created a limited exception to this general rule. The rationales for this limited exception include the insurer’s need to protect itself from fraud by investigating claims soon after the underlying events; to set reserves; and to take an active, early role in settlement discussions
 
 (see American Home Assur. Co. v International Ins. Co.,
 
 90 NY2d 433, 441-442 [1997];
 
 Unigard,
 
 79 NY2d at 581-582). Finding these factors inapposite when a reinsurer asserts a late notice of claim defense against a primary insurer, we declined to extend the
 
 Security Mutual
 
 no-prejudice exception to the reinsurance
 
 *497
 
 context
 
 (see Unigard,
 
 79 NY2d at 584;
 
 cf. American Home,
 
 90 NY2d at 442).
 

 Here, Nationwide has not shown that the same factors support allowing insurers to evade their obligations, without showing prejudice, when insureds seeking SUM coverage provide late notice of legal action. While immediate notice of legal action may indeed help SUM insurers to protect themselves against fraud, set reserves, and monitor and perhaps settle the tort actions, the notice of claim requirement serves this purpose.
 
 [4]
 
 More is required to justify extending the
 
 Security Mutual
 
 no-prejudice exception further. Nationwide contends that personal injury claims that result in litigation are especially likely to involve “questionable injuries” or fraud, but it presents no support for this assertion.
 

 The specifics of this case, moreover, do not help Nationwide. There is no allegation that petitioner and Cancel colluded; that Cancel’s insurer lacked good reasons when it offered to settle for her policy limits; that petitioner settled without leave from Nationwide; or that Nationwide could have managed a better disposition of the claim if it had known of the tort action sooner. Nationwide also does not explain how it lost track of petitioner’s timely notice of claim, or why the information in that notice did not alert it to any need it had to investigate, set reserves and so forth.
 
 [5]
 

 At bottom, then, Nationwide’s position must be that it needs a no-prejudice exception here too, because it depends on notices of legal action to awaken it in SUM matters where the notices of claim do not at first get its attention. Nationwide
 
 *498
 
 articulates something like this point when it asserts, citing
 
 Mancuso,
 
 that “[a] claim for underinsurance benefits * * * has a number of conditions along the way” (Mancuso, 93 NY2d at 493). To Nationwide, the insured’s action against the tortfeasor is one of the critical events, the moment when the potential for SUM liability “ripens.” But this moment varies widely from case to case. It may come up to three years after the accident (see CPLR 214) or possibly years before the tort action is tried or settled. And, as
 
 Mancuso
 
 indicates, the tort action may begin before the insured knows or reasonably should know that the tortfeasor is underinsured and hence before the insured can comply with the policy’s notice of claim requirements
 
 (see Mancuso,
 
 93 NY2d at 495-496).
 

 Thus, unlike most notices of claim — which must be submitted promptly after the accident, while an insurer’s investigation has the greatest potential to curb fraud — notices of legal action become due at a moment that cannot be fixed relative to any other key event, such as the injury, the discovery of the tortfeasor’s insurance limits or the resolution of the underlying tort claim. Contrary to Nationwide’s position, then, the timing of the notice of legal action requirement does little to make performance of this requirement stand out as an event that informs the insurer of its “ripened” need to investigate, set reserves or take charge of settlement. Possibly another insurer will show that a policyholder’s failure to deliver timely notice of action prejudiced it by hindering it from addressing this need. But Nationwide has not established that such prejudice is so inevitable as to justify further extending the no-prejudice exception.
 

 Under these circumstances, and given the protection SUM insurers already enjoy by virtue of the notice of claim requirement and the clauses governing settlement, insurers relying on the late notice of legal action defense should be required to demonstrate prejudice. We place the burden of proving prejudice on the insurer because it has the relevant information about its own claims-handling procedures and because the alternative approach would saddle the policyholder with the task of proving a negative.
 

 In light of this conclusion we need not and do not pass on petitioner’s alternative contention that Nationwide’s disclaimer was untimely.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 
 *499
 
 Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . In the briefs and record before us, the name is variously spelled “Cancel,” “Concel” and “Conceal.” We have selected the version used by a research bureau that investigated Cancel to determine the extent of her assets and in the files of Cancel’s insurer.
 

 [2]
 

 . In fact, Cancel had $25,000 in liability insurance, but because this sum was less than petitioner’s $100,000 in SUM coverage, she remained “uninsured” within the Nationwide policy’s definition, which includes underinsured motorists.
 

 [3]
 

 . New York is one of a minority of states that still maintain a no-prejudice exception (see Ostrager and Newman, Insurance Coverage Disputes § 4.04 [11th ed]). Formerly a majority of states took this approach, but, as the Supreme Court of Tennessee noted when it recently adopted a prejudice requirement in a case involving a late notice of claim for uninsured motorist coverage, “the number of jurisdictions that still follow the traditional view has dwindled dramatically”
 
 (Alcazar v Hayes,
 
 982 SW2d 845, 850 [Tenn 1998]). Indeed, that court noted that in the preceding 20 years, only two states — New York and Colorado — had “considered the issue” and “continued to strictly adhere to the traditional approach”
 
 (id.
 
 at 853). Since then, Colorado adopted the majority rule, requiring insurers to demonstrate prejudice
 
 (see Clementi v Nationwide Mut. Fire Ins. Co.,
 
 16 P3d 223, 230 [Colo 2001]).
 

 As
 
 Clementi
 
 and
 
 Alcazar
 
 illustrate, states often begin the shift to a prejudice requirement in the uninsured motorist context, where various policy considerations — the adhesive nature of insurance contracts, the public policy objective of compensating tort victims, and the inequity of the insurer receiving a windfall due to a technicality — are clearly implicated
 
 (see Clementi,
 
 16 P3d at 229). The issue of whether New York should continue to maintain the no-prejudice exception when insurers assert late notice of claim as a defense is not before us.
 

 [4]
 

 . Nationwide stated at oral argument that notice of claim typically is submitted before notice of legal action, as in this case.
 

 [5]
 

 . When petitioner submitted his no-fault claim, Nationwide was aware of the potential for SUM exposure, and made note of a plan to investigate any injuries petitioner may have had before the accident. The record does not show whether Nationwide followed up on this plan, a procedure designed to limit its exposure to claims based on “questionable injuries” or fraud. The claims file also does not show that Nationwide, aware by late 1997 of the SUM potential and the operation, asked its customer about suit against the tortfeasor.
 

 Nationwide’s procedures for handling no-fault and SUM claims doubtless differ, and we do not say that notice of one kind of claim can substitute for the other. Nevertheless, the least that can be said on this record is that neither Nationwide’s treatment of the no-fault claim nor its treatment of the SUM claim suggests that Nationwide took any active interest in investigating, settling or setting, reserves for petitioner’s claim. The emphasis in both cases was solely on determining whether late notice might relieve Nationwide of its coverage obligations.