OPINION OF THE COURT
Rolando T. Acosta, J.
*741 Introduction
Kuok Hang Leong was struck by a car insured by American Transit Insurance Company, and the insureds neither informed American Transit of the accident nor of Leong’s lawsuit instituted several months later. Leong, however, immediately notified American Transit about the accident,[1] and his attorney informed American Transit that it had been retained to pursue any legal claims. Leong also sought no-fault benefits from American Transit. In response, American Transit assigned a claims adjuster, investigated the claim, and asked Leong to submit to an independent medical exam (IME) on three separate occasions. Notwithstanding the fact that counsel served American Transit with its default judgment motion against the insureds and American could have prevented the default, American Transit instead commenced the instant action and moved for a judgment declaring that it did not have to defend or indemnify the insureds or the victim. According to American Transit, it could disclaim coverage because neither the insureds nor the victim provided timely notice of litigation, and that a showing of prejudice was not required before it could disclaim on this basis. Leong cross-moved to dismiss American Transit’s complaint, arguing that American Transit’s motion was premature and that in any event he had given it timely notice.
The court is thus required to consider the primary issue in these motions for summary judgment, namely, whether the “no-prejudice” rule applies in the facts of this case, and even if it does, whether that requirement was satisfied by counsel’s letter informing American Transit that it had been retained to pursue any potential claims. Given the circumstances of this case, the court finds in favor of the victim. American Transit had timely knowledge of the accident and was well aware of Leong’s counsel’s involvement in the matter. The court will not permit American Transit to manipulate its own notice requirements to deny coverage to a victim.
Background
Plaintiff American Transit issued a car insurance policy on behalf of defendant B.O. Astra Management Corp. with a policy period from March 1, 2004 to March 1, 2005. Although B.O. Astra owned the vehicle, the vehicle was registered to defendant Manuel Lema. On March 19, 2004, defendant Leong was struck by the vehicle driven by defendant Mario Chauca in Queens County.
*742 Twelve days after the accident, on March 31, 2004, Leong’s counsel provided American Transit with written notice of Leong’s accident and claim. The written notice stated, inter alia, “[pllease be advised that your insured was involved in a car accident. This letter is to inform you that we have been retained by [Leong] in this matter, and to further inform you of potential claims against your insured.” On that same date, by separate letter, Leong’s counsel sent American Transit a letter and an application for no-fault benefits.
Approximately one month after the accident, on April 22, 2004, American Transit acknowledged in writing that it had received Leong’s correspondence, that it was investigating the claim and that it would contact counsel’s office upon completion of the investigation, that a file had been established, provided the name of the claims adjuster, and requested additional information regarding Leong’s liability theory and injuries.
Since American Transit was also the no-fault carrier on Leong’s first-party benefits claim for, among other expenses, medical bills, it requested that Leong see an orthopedic surgeon for examination five weeks after the accident. The initial request for an IME was followed up with three additional requests.
Four months after the accident, on July 7, 2004, Leong initiated a lawsuit against B.O. Astra, Lema and Chauca in Supreme Court, Queens County (the underlying action). Neither B.O. Astra, Lema nor Chauca informed American Transit of the underlying action. According to American Transit, it did not learn of the underlying action until January 27, 2005, when it received a copy of Leong’s motion for a default judgment against B.O. Astra, Lema and Chauca. On February 4, 2005, American sent notification to all defendants that it was disclaiming coverage for failure to provide timely notice of the commencement of the underlying action. Three and a half months later, on May 20, 2005, American Transit commenced this action seeking a declaration that it does not have a duty to defend or indemnify the defendants. Only Leong answered American Transit’s complaint raising several affirmative defenses, including failure to state a cause of action.
American Transit’s claim is based on language in the policy, which allegedly states that “[i]f any suit is brought against the insured . . . the insured shall immediately forward to the company every summons or other process served upon him . . . .” A copy of the policy containing this language, however, was not attached to American Transit’s motion papers.
*743 On June 7, 2005, Leong obtained a default judgment against B.O. Astra, Lema and Chauca on the underlying action and an inquest was held on November 22, 2005.
Motions for Summary Judgment
Plaintiffs motion for summary judgment is denied inasmuch as Leong has not had the opportunity to engage in discovery. (CPLR 3212 [f].) As Leong argued in his moving papers, “American Transit should have to produce its claim file in this matter, its insurance policy setting forth the obligations, rights and duties of American Transit and all documents regarding its investigation into the claim.” (Affirmation in support of cross motion 1i 22; Baron v Incorporated Vil. of Freeport, 143 AD2d 792, 792-793 [2d Dept 1988] [“(i)t is well established that where facts essential to justify opposition to a motion for summary judgment are exclusively within the knowledge and control of the movant, summary judgment may be denied”].) Since B.O. Astra and Lema defaulted in the underlying action, there is no reason to believe that Leong would have any information about the policy in its possession. Indeed, as noted above, plaintiff did not even attach a copy of the policy to its moving papers in the instant case.
Plaintiff’s motion for summary judgment is also denied because even if it had attached the insurance policy and thereby established the notice of lawsuit requirement, the court finds that under the circumstances of this case, that requirement was satisfied. Therefore, Leong’s cross motion for summary judgment dismissing the complaint against him is granted.
Notice Requirements
An insurer may demand that in addition to receiving timely notice of the accident, that it also receive timely notice of claimant’s commencement of litigation. (American Tr. Ins. Co. v Sartor, 3 NY3d 71 [2004].) “The purpose of such notice is to provide the insurer with a fair and reasonable opportunity to appear and defend against a claim or exercise its right to settle the matter.” (Id. at 75.) The failure to satisfy this condition precedent “may allow an insurer to disclaim its duty to provide coverage.” (Id. at 76 [emphasis added].)
Unlike failure to give timely notice of claim, which relieves the insurer of its obligation to perform whether or not it can show prejudice (the no-prejudice exception),[2] the notice of law suit requirement is not always governed by the “no-prejudice” *744 rule. (See, e.g., Matter of Brandon [Nationwide Mut. Ins. Co.], 97 NY2d 491, 496-497 [2002] [the insurance policy in this case dealt with Supplementary Uninsured Motorist (SUM) coverage].) As the Court of Appeals noted in Matter of Brandon, the limited “no-prejudice” exception was created in Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp. (31 NY2d 436 [1972]), to allow the insurer to protect itself from fraud by investigating claims soon after the underlying events, to set reserves, and to take an early and active role in settlement discussions. “While immediate notice of legal action may indeed help SUM insurers to protect themselves against fraud, set reserves and monitor and perhaps settle the tort action,” the Court of Appeals held that “the notice of claim requirement served this purpose.” (Matter of Brandon, 97 NY2d at 497.) Likewise, in Rekemeyer v State Farm Mut. Auto. Ins. Co. (4 NY3d 468, 476 [2005]), the Court of Appeals held that where an insured previously gives timely notice of the accident, the carrier must establish that it is prejudiced by a late notice of SUM claim before it may disclaim coverage. Significantly, in Rekemeyer, the Court of Appeals noted that in addition to giving timely notice of the accident, the plaintiff made a claim for no-fault benefits soon thereafter.
“That notice was sufficient to promote the valid policy objective of curbing fraud or collusion. Moreover, the record indicates that State Farm undertook an investigation of the accident. It also required plaintiff to undergo medical exams [on two separate occasions]. Under these circumstances, application of a rule that contravenes general contract principles is not justified.” (Rekemeyer, 4 NY3d at 475-476.)
The issue of whether a primary insurer can rely on the “no-prejudice” exception and disclaim coverage based solely upon a late notice of litigation or whether it must show prejudice was addressed by the Court of Appeals in Argo Corp. v Greater N.Y. Mut. Ins. Co. (4 NY3d 332 [2005]). In Argo, plaintiff did not give notice of claim and gave notice of lawsuit 14 months after *745 the injured party served the complaint upon the Secretary of State, six months after service of the default motion upon plaintiffs, until more than three months after default was entered, and until almost three months after service of the note of issue upon plaintiffs. (Id. at 338.)
“[UJnder the circumstances of this case,” the Court of Appeals held that plaintiffs late notice was untimely as a matter of law and that the insurer need not show prejudice. (Id. at 336 [emphasis added].) The Court noted that “Brandon did not abrogate the no-prejudice rule and should not be extended to cases where the carrier received unreasonably late notice of claim.” (Id. at 339-340.) It also noted that the facts in Argo “are distinguishable from Brandon where a timely notice of claim was filed, followed by late notice of lawsuit, and distinguishable from Rekemeyer, where an insured gave timely notice of the accident, but late notice of the SUM claim.” (Id. at 340.) It is in this context that the Court of Appeals held that:
“The rationale of the no-prejudice rule is clearly applicable to a late notice of lawsuit under a liability insurance policy. A liability insurer, which has a duty to indemnify and often also to defend, requires timely notice of lawsuit in order to be able to take an active, early role in the litigation process and in any settlement discussions and to set adequate reserves. Late notice of lawsuit in the liability insurance context is so likely to be prejudicial to these concerns as to justify the application of the no-prejudice rule. Argo’s delay was unreasonable as a matter of law and thus, its failure to timely notify GNY vitiates the contract. GNY was not required to show prejudice before declining coverage for late notice of lawsuit.” (Id.)
In the present case, according to plaintiff, Leong failed to satisfy the notice of lawsuit requirement because plaintiff first learned of the underlying lawsuit on January 27, 2005, when Leong served plaintiff with a copy of his default motion. Since the lawsuit was commenced almost seven months earlier on July 7, 2004, notice of the suit was not timely. Plaintiff further argues that it is irrelevant whether it suffered any prejudice.
In this court’s opinion, even though this case does not deal with SUM insurance, the rationale of Brandon still applies. American Transit was not only given timely notice of claim (as *746 in Brandon), but it was also informed that counsel had been retained. Moreover, American Transit stated that it would investigate the claim and provided counsel with the name of a claims adjuster. Significantly, American Transit was also the no-fault carrier on Leong’s first-party benefits claim and requested that Leong see an orthopedic surgeon for examination five weeks after the accident. The initial request for an IME was followed up with three additional requests. (See, e.g., City of New York v Continental Cas. Co., 27 AD3d 28 [1st Dept 2005] [insurer was given timely notice of occurrence, actively participated in the litigation before City was impleaded, and was served with a copy of the complaint against the city by Consolidated Edison Co. when it was originally served].) Also, unlike Argo, American Transit received notice of the lawsuit before a default judgment had been entered. Furthermore, American Transit could have prevented the default (see, e.g., Halali v Vista Envts., Inc., 8 AD3d 435, 435 [2d Dept 2004] [“(t)he non-party . . . Insurance Company” is an “interested person” under CPLR 5015]), but chose instead to allow the default judgment to be entered unopposed so that it could later avail itself of the “no-prejudice” rule.[3] Accordingly, the “no-prejudice” rule does not apply in this case.
Even if the “no-prejudice” rule were to apply in the facts of this case, this court finds that counsel’s letter to American Tran *747 sit informing it that counsel had been retained satisfied the notice of lawsuit requirement. That letter, which specifically stated that counsel was informing American of potential claims against it, clearly served the notice requirement’s function, as identified by the Court of Appeals in Argo. Namely, it allowed American Transit the opportunity “to be able to take an active, early role in the litigation process and in any settlement discussions and to set adequate reserves.” (Argo Corp. v Greater N.Y. Mut. Ins. Co., supra, 4 NY3d at 340.) Indeed, American Transit did just that by immediately investigating the claim, assigning a claims adjuster and asking Leong to submit to an IME. To rule otherwise would reward American Transit for manipulating its alleged ignorance of Leong’s demise in order to avoid honoring its own insurance policy obligations. Moreover, it would turn on its head the legislative policy choice which permits the victim of an accident to notify the insurer when, as here, the insured failed to do so. Accordingly, Leong’s motion for summary judgment dismissing the complaint is granted.
Plaintiffs Motion for a Default Judgment against B.O. Astra, Lema and Chauca.
Plaintiff’s motion for a default judgment against B.O. Astra, Lema and Chauca is denied even though they failed to appear in this matter inasmuch as American Transit’s duty to indemnify in this case was preserved by Leong. That is, pursuant to Insurance Law § 3420 (a) (3), the injured party in an accident does not have to rely on the insured to provide notice and can instead provide the notice on his own. As the Court of Appeals noted in American Tr. Ins. Co. v Sartor (3 NY3d 71, 79 [2004]),
“Mather than being left to the mercy of an insured’s acts of compliance or noncompliance with the terms of the insurance policy, a claimant injured by a vehicle . . . can safeguard the ability to seek enforcement of a judgment against the insurer by exercising the independent notice right provided by the Legislature in Insurance Law § 3420 (a) (3).”
Here, Leong availed himself of Insurance Law § 3420 (a) (3), and gave the proper notices.
Accordingly, based on the foregoing, it hereby ordered that plaintiffs motion for a default judgment against B.O. Astra, Lema and Chauca is denied; and it is further ordered that *748 plaintiff’s motion for summary judgment against all the defendants is denied; and it is further ordered that defendant Leong’s motion for summary judgment dismissing the complaint against it is granted.

. Insurance Law § 3420 (a) (3) permits an injured party to provide notice to the insurance company of the automobile involved in the accident.

. “The no-prejudice” rule is *744 “a limited exception to two established contract principles: ‘(1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice; and (2) that a contractual duty [requiring strict compliance] ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.’ ” (Rekemeyer v State Farm Mut. Auto. Ins. Co., 4 NY3d 468, 475 [2005], quoting Unigard See. Ins. Co. v North Riv. Ins. Co., 79 NY2d 576, 581 [1992].)

. Although on February 1, 2005, American Transit sent Leong a proposed stipulation which stated, inter alia, that it would appear on behalf of the insureds and Leong would withdraw his motion for default judgment (see affidavit of Richard Carroll, dated Oct. 18, 2005, exhibit A), Leong rejected the stipulation on the grounds that it was really “a legal agreement on various legal issues and points.” (Affirmation in further support of Leong’s cross motion, dated Oct. 24, 2005, If 9.) Indeed, American Transit’s proposed stipulation stated in relevant part:
“There has been no timely notification to American Transit. . . that an action was commenced as required by the policy. The Summons and Complaint for this action have never been received by American Transit . . . , neither the plaintiff nor the insured gave timely notice that an action had been initiated.
“Since there was a breach of a policy condition American Transit . . . can disclaim coverage to the insured and the injured party for all claims arising out of this accident and would have no obligation to pay any portion of Judgment rendered against its insured or any costs associated with same.”
Leong, however, stated that he was willing to vacate the default, withdraw the inquest that had been scheduled, and accept an answer by American Transit on behalf of the insureds if they agreed to defend and indemnify their insureds under the limits of the policy. (Affirmation in further support of Leong’s cross motion 11 5, exhibit 1.)