In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1144

ROBERT M. ANDERSON,

*Plaintiff-Appellant*,

*v.*

AON CORPORATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 6241—**Blanche M. Manning**, *Judge*.

ARGUED SEPTEMBER 18, 2009—DECIDED JULY 26, 2010

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.   Investors injured by fraud may recover under federal securities law only if the deceit caused them to purchase or sell securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). This purchaser-seller rule limits implied private rights of action but not the substantive requirements of federal law. Fraud is unlawful, see §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and the SEC's

Rule 10b–5, 17 C.F.R. §240.10b–5, whether or not it induces a particular investor to buy or sell shares. See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) (a suit by investors who did not trade is within the scope of §10(b) even though the holder lacks a private action for damages). The Justices observed in *Blue Chip Stamps* that states may supply a remedy when federal law does not. 421 U.S. at 738–39 n.9. California has done this. It authorizes "holder actions"—that is, suits by investors who contend that deceit caused them to hold their shares, when they would have sold had they known the truth. See *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 65 P.3d 1255 (2003).

In 2003 Robert Anderson, who lives in California, sued Aon Corporation in state court there. Aon, whose shares trade on the New York Stock Exchange (and around the globe), is incorporated in Delaware and has its headquarters in Illinois. Anderson sold his business (a California insurance brokerage) to Aon in 1997, receiving about 95,000 shares of its stock, which then traded for about $69 a share. By 2002 Aon was selling for about $14 a share, and Anderson attributed the decline to mismanagement that began in 1996 and was not fully revealed until 2002. He contends that, but for Aon's fraud, he would have discovered the problems earlier and sold the stock before its price dropped. Anderson relied on California law and disclaimed any remedy under federal securities law. Aon removed this suit to federal court under the diversity jurisdiction. The federal judge indicated an inclination to transfer the suit to Illinois under 28 U.S.C. §1404(a), but before this could be accomplished Anderson dismissed the suit without prejudice.

Anderson filed a second suit in 2005, again in state court. This time he added two California citizens as additional defendants, hoping to prevent removal. The defendants removed anyway, because Anderson had framed one claim under federal law: he contended that Aon had violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. Defendants argued, for good measure, that the two California citizens had been joined fraudulently (in the sense that Anderson lacked any plausible claim against them and had thrown them in only to defeat diversity jurisdiction). About a month after the suit's removal, Anderson dismissed the RICO claim, asserting that it had been added to the complaint inadvertently. He moved for remand. Instead, the district court transferred the proceeding to Illinois under §1404(a).

The district judge in Illinois concluded that Illinois law supplies the rule of decision. Securities law in Illinois tracks federal law when the statutes use the same language, see *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 455, 813 N.E.2d 1138, 1142 (2004), which means that Illinois may follow the purchaser-seller rule of *Blue Chip Stamps*. The district judge concluded that Anderson does not have a viable claim under Illinois law. The court dismissed the complaint under Fed. R. Civ. P. 12(b)(6). 2008 U.S. Dist. LEXIS 94169 (N.D. Ill. June 16, 2008). Anderson then filed an amended complaint invoking federal securities law. The district court concluded that the new theory is untimely, which led to entry of final judgment in Aon's favor. 2008 U.S. Dist. LEXIS 103010 (N.D. Ill. Dec. 22, 2008).

Anderson's lead argument on appeal is that, once he withdrew the RICO claim, federal jurisdiction vanished and 28 U.S.C. §1447(c) obliged the court to remand. Section 1447(c) says, among other things, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Anderson believes that the RICO claim was the only foundation for subject-matter jurisdiction. True, it was the only basis of original federal jurisdiction. But if there is federal jurisdiction on the date a suit is removed—as there was in this suit—the final resolution of the claim that supported the suit's presence in federal court does not necessitate remand. The district court may retain jurisdiction under 28 U.S.C. §1367(a), which says that federal courts "have supplemental jurisdiction over all other claims that are so related to claims [within the original jurisdiction] that they form part of the same case or controversy". Anderson's holder claims under California law arise from the same transactions that underlay his RICO claim, so the district court had supplemental jurisdiction. See *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1867 (2009).

The district judge in California reached this conclusion when declining to remand. The district judge in Illinois agreed. The fact that the conclusion was reached first by a judge outside the seventh circuit does not disable us from addressing the subject. We review the judgment of the district judge in Illinois, and the reasons for that judgment (if only reliance on the law of the case) are open to consideration in this circuit. *Jones*

*v. InfoCure Corp.*, 310 F.3d 529, 534 (7th Cir. 2002). Some circuits have taken a different approach and held that review is split between the transferor district's circuit and the transferee district's circuit, see *TechnoSteel, LLC v. Beers Construction Co.*, 271 F.3d 151, 154–56 (4th Cir. 2001) (collecting cases), but that understanding over-looks the vital point, which we stressed in *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003), that the decision to transfer a suit under §1404(a) is not separately appealable. The only final decision is the one entered by the transferee district, and an appeal from a final decision brings up all interlocutory rulings for appel-late resolution. We do not review any decision made by the transferor district, but our review of the final deci-sion includes all issues that affected the judgment. Our jurisdiction is secure, so we must decide whether the district court erred in invoking the supplemental juris-diction.

Anderson insists that §1367 applies only when the district judge dismisses the federal claim; because he dismissed his own federal claim, Anderson maintains, §1367 is irrelevant. That's not what §1367(a) says, how-ever. It asks whether the state-law claims are part of the same controversy as the federal claims. That relation is what creates supplemental jurisdiction. Anderson observes that §1367(c)(3) provides that a federal court may decline to exercise this supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction". He reads this as if it said that supplemental jurisdiction exists only if the district judge (as opposed to the plaintiff) dismisses the claims

within original federal jurisdiction. But the supplemental jurisdiction depends on subsection (a), not subsection (c), which covers when the jurisdiction should be exercised rather than whether it exists in the first place. (What's more, Anderson misses the point that the district *court* dismissed the RICO claim, even though the *judge* did not; a voluntary dismissal under Fed. R. Civ. P. 41(a) has the effect of a judgment with prejudice when, as here, it is the second suit based on the same transaction. See Rule 41(a)(1)(B) and, e.g., *Sullivan v. Conway*, 157 F.3d 1092, 1095 (7th Cir. 1998).)

Instead of remanding mechanically under §1447(c), a district court must decide whether the state-law claims should be resolved in federal court after the federal claims have been dismissed. The district court did not abuse its discretion by concluding that it should tackle the state-law theories in this suit. Anderson has been playing games. He filed suit in 2003 and dismissed it on the verge of a transfer to Illinois. He filed suit again in 2005, adding as defendants two citizens of California whose presence he hoped would prevent removal—and on learning that the RICO claim foiled this plan, Anderson dismissed it with the specious assertion that its inclusion had been "inadvertent." Ill-considered, perhaps, and counterproductive from his perspective, but how a claim prominently pleaded at the outset of a lawsuit could be "inadvertent" is beyond our grasp. Anderson evidently wants to try yet again in state court. Defendants should not be hectored in this fashion. Aon is entitled to a decision. By resolving the state-law claims,

the district court sensibly prevented Anderson from needlessly multiplying and prolonging the proceedings.

A transfer under §1404(a) does not affect the applicable law. See *Ferens v. John Deere Co.*, 494 U.S. 516 (1990). This means that California's choice-of-law rules, which governed both in state court and in the federal district court in California, also govern now that the proceeding is before a federal court in Illinois. (The procedures of the transferee district govern, however; that's why we used seventh circuit law when considering the supplemental jurisdiction. See *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126–27 (7th Cir. 1993).) California applies what it calls a "governmental interest analysis," which the Supreme Court of California recently recapitulated:

> In brief outline, the governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" . . . and then ulti-

mately applies "the law of the state whose
interest would be the more impaired if its law
were not applied."

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08,
137 P.3d 914, 922 (2006) (citation omitted). The third step
of this interest-balancing approach invites home-town
favoritism, which Anderson hopes will work to his ad-
vantage as a California citizen who sued in California.
But we think that California law applies without any
need for a home-town preference.

California law permits holder suits; Illinois law may not.
That's a potential difference, though not one based on
any difference in substantive rules. Fraud is unlawful in
all 50 states. Aon does not contend that Illinois and Cali-
fornia define the forbidden conduct differently. The
difference lies only in enforcement: California enforces
the rule by (1) criminal prosecutions, (2) civil litiga-
tion by state officials, (3) administrative proceedings,
(4) private suits by investors who bought or sold stock
while the price was affected by fraud, and (5) private
suits by investors whose decision to hold stock, rather
than buy or sell it, was influenced by the fraud. Illinois
enforces the rule by methods (1) to (4); its judiciary
has not decided whether to add method (5). That choice
may depend on the tradeoff between the benefit of
extra enforcement and the risk of baseless suits. As the
Supreme Court observed in *Blue Chip Stamps*, there
are many possible reasons for *in*-action, and it may be
inordinately hard to distinguish between them in
private litigation. Investors may hold stock hoping that

it will rise, then sue if it falls, using the litigation to obtain a cost-free put option. A jurisdiction that is not confident that it can ascertain causation in ambiguous situations will follow *Blue Chip Stamps*. But that's a far cry from saying that the defendant has done nothing wrong or is entitled to be free of liability.

California nonetheless includes among true conflicts any difference, based on divergent state policies, in the categories of persons allowed to recover damages. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 90–96, 225 P.3d 516, 529–33 (2010), holds that a difference in the length of the states' statutes of repose creates a true conflict. See also *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157, 583 P.2d 721 (1978) (true conflict exists when one state allows the employer of a tortiously injured person to bring a separate suit for derivative injuries, and the other state does not).

California therefore would reach the third factor in its governmental-interest analysis, and we think that it would find its interest more impaired by a decision to use the other state's law—for although California has decided that holder actions are in the public interest, Illinois has *not* decided that they disserve the public interest. Indeed, though the district judge was confident that Illinois would not allow holder actions by its own citizens, the state judiciary has yet to make up its mind. The only appellate decision where the question has come up is *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 920 N.E.2d 1161 (2009). The majority thought it unnecessary to decide the point, and a concurring judge concluded that holder actions are proper under Illinois law.

How could that be, when Illinois reads its securities statutes the same way federal courts read the federal securities laws? Because *Blue Chip Stamps* is about implied private rights of action; it does not hold that the statutes themselves either allow fraud against holders or limit the set of plaintiffs. This is why the Supreme Court decided in *Dabit* that holder class actions are within the scope of §10(b) and affected by the Securities Litigation Uniform Standards Act of 1998. A fraud suit in Illinois would not require the judicial creation of a right of action to enforce a statute that is silent about who may sue; the claim would rest on established common law. It is tortious in Illinois to fraudulently induce someone to refrain from acting. See *Schmidt v. Henehan*, 140 Ill. App. 3d 798, 804, 489 N.E.2d 415, 419 (1986). That's why the only judge who reached the question in *Dloogatch* thought that suits by holders are proper— and this is the same tort that the Supreme Court of California held, in *Small*, supports holder actions in securities litigation.

If Illinois is on the fence about holder actions, while California thinks them beneficial, then the third stage of the California choice-of-law approach is straightforward. California can vindicate its own interests without impairing any interest of Illinois. We therefore conclude that California would elect to use its own law (recall that Anderson is a citizen of California, sold his business in California to Aon, received Aon's stock there, and sued in a California court) and would entertain Anderson's holder action.

Anderson has a difficult road ahead. He traces the decline of Aon's stock price to mismanagement, not fraud: the (alleged) fraud just deferred the time when the stock's price accurately reflected the value of Aon's business. Yet Anderson can't recover on account of mismanagement. That would require a shareholders' derivative suit, which this is not, and Delaware would supply the rule of decision in such an action. (Aon is incorporated in Delaware, and the internal-affairs doctrine applies to derivative suits the law of the incorporating state. See *Grosset v. Wenaas*, 42 Cal. 4th 1100, 175 P.3d 1184 (2008).)

Aon contends that the complaint does not identify, with the required particularity, see Fed. R. Civ. P. 9(b), the fraud in which it supposedly engaged. The district court should take up that subject (we decline Aon's request to make the initial decision ourselves), along with questions such as whether the statements to which Anderson points concern facts rather than opinions (as Aon contends).

There's also likely to be a problem showing causation. See *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Suppose Aon had revealed the truth as soon as its managers knew about business problems. Then the stock's price would have fallen to reflect the bad news, because Aon is a substantial firm trading in an efficient stock market. See *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). (Our point is not that the market price necessarily reflects all public information correctly, but that Anderson's own claim depends on market prices.

Investors cannot reliably beat the market without knowing something that other investors don't.) Anderson can show injury only if he would have sold his shares ahead of the decline. Yet public announcement of the truth would have made it impossible for Anderson to avoid the loss. Although a private revelation to Anderson could have enabled him to sell before the decline, trading on the basis of material nonpublic information revealed in confidence by the issuer violates federal securities laws. See generally *United States v. O'Hagan*, 521 U.S. 642 (1997). Anderson can't use hypothetical inside trading as the basis of his recovery. Whether he has any other basis remains to be seen.

REVERSED AND REMANDED