In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3457

ROBERT M. ANDERSON,

*Plaintiff-Appellant*,

*v.*

AON CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 6241—**Rebecca R. Pallmeyer**, *Judge*.

SUBMITTED MARCH 10, 2012—DECIDED MARCH 29, 2012

Before EASTERBROOK, *Chief Judge*, and WILLIAMS and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The first time this case was here, we held that California law applies and remanded for consideration of Anderson's "holder" claims—because California, unlike federal securities law, permits a person who did not purchase or sell stock in reliance on a fraudulent representation to maintain a suit for damages. 614 F.3d 361 (7th Cir. 2010). On remand the district court dismissed the complaint, ruling that it did

not adequately allege defendants' state of mind and Anderson's reliance on any particular false statements Aon had made. 2011 U.S. Dist. LEXIS 111217 (N.D. Ill. Sept. 29, 2011). The judge also suggested that Anderson had not shown a plausible way to disentangle the effects of corporate mismanagement (which is actionable only through derivative litigation) from the effects of delay in disclosing that mismanagement to the public.

In response to Anderson's appeal, Aon advances an additional argument in support of its judgment—an argument flagged for attention by our first decision. 614 F.3d at 367. Anderson contends that he was damaged because Aon's unduly optimistic statements caused him to hold rather than sell his stock. We observed that Aon is a large firm with many active and professional traders, so the price of its stock adjusts rapidly to public disclosures. If Aon had disclosed the truth earlier, we noted, the price of its stock would have fallen before Anderson could have sold. This left a puzzle: How could Anderson show that delayed disclosure caused his injury?

Anderson replies that the California decision establishing the state's "holder" doctrine, *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167 (2003), did not worry about causation. That may be because the question had not been briefed. The problem that our opinion highlighted arises only with respect to securities traded in efficient markets, where disclosure will cause the price to change before any amateur investor (such as Anderson) can react; this requires some inquiry into the nature

of the market in which an issuer's stock is listed. But it does not matter why *Small* bypassed this subject. Our opinion did not bypass it and is the law of the case.

Anderson has never attempted to explain how he could have avoided a loss on the shares he held, had Aon made an earlier disclosure. As Anderson describes things, Aon's stock was overpriced for years because the firm was concealing mismanagement. That mismanagement, not any fraud, is the cause of investors' loss. The price of its stock was doomed to fall no matter eventually in line with its real value. The fraud (if there was one) just delayed the inevitable and affected *which* investors bore the loss. Because Anderson cannot show that earlier disclosure would have enabled him to sell (and thus shift the loss to other investors) before the stock's price dropped, he cannot establish causation.

He tries to get around this problem by pointing to a different series of transactions. In October 2000, three years after acquiring the Aon stock, Anderson bought a "collar" from Merrill Lynch. A securities collar is a pair of offsetting options that puts a floor under the stock's price in exchange for a ceiling. See *SEC v. Lehman Bros., Inc.*, 157 F.3d 2, 4 (1st Cir. 1998). Anderson bought a put option from Merrill Lynch, entitling him to require Merrill Lynch to buy about 83,000 of his approximately 95,000 Aon shares at a price of $33.19 per share. (At the time the option was created, Aon was selling for about $40.) Anderson gave Merrill Lynch a call option, entitling it to acquire the same 83,000 shares for a price around $50. Hence the term "collar": from Anderson's perspec-

tive, the stock's effective price was constrained in both directions while the options lasted (two years). In June 2002, while Aon's stock was trading for $30, Anderson sold the put option back to Merrill Lynch, receiving about $200,000. He contends that, had the truth about Aon come out earlier (or at any time before October 2002, when the collar expired), he would have saved about $19 per share on all of the shares covered by the collar. (Aon's stock fell to $14 in late 2002.) This isn't the whole difference between Anderson's purchase price ($69 a share) and the $14 minimum (a total loss of about $5.2 million), nor did the collar apply to about 12,000 of his shares, but $19 times 83,000 shares is about $1.6 million, which is better than the $200,000 Anderson received when he sold the put option.

Arguments based on the option go nowhere, however, because they are barred by the statute of limitations. An option on exchange-traded securities is itself a security. 15 U.S.C. §78c(a)(10). Anderson's contention that he suffered a $1.4 million net loss on the sale of an option differs substantially from the contention that he suffered a $5.2 million loss on the non-sale of stock. The latter is a "holder" action under California law; the former isn't. The district court in 2008 held that any securities-law claim is barred by the statute of limitations. 2008 U.S. Dist. LEXIS 103010 at *7-8 (N.D. Ill. Dec. 22, 2008). Anderson did not make a securities-law claim in 2003, when this litigation began, and the district court held that the securities-law claim advanced several years later does not relate back to the original complaint. Anderson did not contest that decision in his

initial appeal. On remand after our first decision, the district court reiterated its conclusion that any claim based on the sale of the put option is untimely. 2011 U.S. Dist. LEXIS 111217 at *22-25 & n.8. Anderson has not contested that decision on this second appeal.

Anderson's reply brief faults us for not discussing the put option in our 2010 opinion. The reason we didn't discuss it is that the claim had been ruled untimely, and Anderson did not contest that decision; the word "option" does not appear in the briefs he filed in the first appeal. The sale of the put option has been out of this case since 2008 and cannot be used to resuscitate the holder action.

Anderson closes his brief by asking for yet another opportunity to amend his complaint. This litigation is almost a decade old. It is far too late to introduce new claims. The district court did not abuse its discretion by denying Anderson's motion to amend the complaint.

AFFIRMED